[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 22, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-16352

_____

D. C. Docket No. 06-60753-CV-DMM

WORLD RENTALS AND SALES, LLC,
a Florida limited-liability company,
CRUZ R. RODRIGUEZ, et al.,

Plaintiffs-Counter-
Defendants-Appellants,

versus

VOLVO CONSTRUCTION EQUIPMENT RENTS, INC.,
a Delaware corporation,

Defendant-Appellee,

VOLVO COMMERCIAL FINANCE LLC,
a Delaware limited-liability company,

Defendant-Counter-
Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 22, 2008)**

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

MARCUS, Circuit Judge:

In this appeal, we address under what circumstances a party may be compelled to arbitrate an agreement it did not sign. Appellants World Rentals and Sales, LLC ("World Rentals"), Cruz R. Rodriguez, Cruz R. Rodriguez General Contractors, Inc., and Cruz R. Rodriguez General Contractor, LLC (collectively the "World Parties"), advance several arguments for why the appellee Volvo Commercial Finance, LLC ("Volvo Finance") should be compelled to arbitrate under an agreement signed only by one of its affiliates, Volvo Construction Equipment Rents, Inc. ("Volvo Rents"). After thorough review, we affirm the district court's denial of the World Parties' motion to compel arbitration.

I.

Although the parties lock horns over the merits of their underlying claims, the facts essential to this appeal are undisputed. Volvo Rents sells and leases Volvo construction equipment through franchisees. Beginning in March 2003, Volvo Rents entered into three agreements - - a Development Agreement and two Franchise Agreements (collectively the "Franchise Agreements") - - with World Rentals.[1] The Franchise Agreements contain the following arbitration provisions:

---

[1] Specifically, on March 15, 2003, Volvo Rents and World Rentals signed a Development Agreement in which Volvo Rents granted the right and World Rentals accepted the obligation

2

> [A]ll disputes, claims, controversies or causes of actions arising between Franchisee and Franchisor shall be finally resolved by arbitration pursuant to the then-prevailing Commerical Rules of the American Arbitration Association ("AAA"). . . . The award of the arbitrator shall be the sole and exclusive remedy between Franchisor and Franchisee regarding any claims, counterclaims, cross-claims, issues or accountings ("Claims") presented or pled to the arbitrator . . . .

Doc. 33 Ex. A2 § 24.5.[2] Notably, the agreements also expressly state that the term "Franchisor" refers "only" to Volvo Rents, "and not [Volvo Rents'] parents or affiliates[.]" Doc. 33 Ex. A1 § 16.4 (Development Agreement); Doc. 33 Ex. A2 § 25.4 (first Franchise Agreement); Doc. 33 Ex. A3 § 25.4 (second Franchise Agreement).

World Rentals obtained financing for its franchise from Volvo Finance, an affiliate of Volvo Rents. The financing arrangement between World Rentals and Volvo Finance is embodied in fifteen documents, which we refer to as the "Loan Documents." The Loan Documents list as events of default, among others, (1) the failure to make timely payments on the outstanding loans, and (2) default or breach of the Franchise Agreements by World Rentals. In September 2004, Cruz R.

---

"to establish and operate" a Volvo Rents franchise in South Florida. Doc. 33 Ex. A1 § 1.1. That same day, Volvo Rents and World Rentals signed a Franchise Agreement that allowed World Rentals to use Volvo Rents' proprietary marks, trade secrets, and other intellectual property. Volvo Rents and World Rentals entered into a second Franchise Agreement on July 3, 2004.

[2] Taking our cue from the parties, we have quoted the arbitration clause in the March 15, 2003 Franchise Agreement. The arbitration clause in the second Franchise Agreement has slightly different language, but the parties assign no significance to the differences, nor can we discern any.

3

Rodriguez, Cruz R. Rodriguez General Contractor, Inc., and Cruz R. Rodriguez General Contractor, LLC executed guaranty and subordination agreements that guaranteed all of World Rentals' obligations under the Loan Documents.

Neither the Loan Documents nor the guarantees contains an arbitration clause. But two of the Loan Documents - - the Working Capital Facility Agreement, dated July 15, 2003, and the Amended Rental Inventory Financing Agreement, dated September 24, 2004 - -  contain the following incorporation provision:

> All schedules, exhibits, and other documents attached to or referred [sic] in this Agreement now or at any time hereafter are hereby incorporated in this Agreement by this reference in their entirety as if fully restated in this Agreement.

Doc. 4 Ex. C § 24(h); Doc. 4 Ex. E § 18(m).

For reasons disputed by the parties and not relevant here, World Rentals' franchise business quickly deteriorated. By early 2005, World Rentals stopped making principal payments to Volvo Finance, which alleges that it refrained from declaring a default for over a year while World Rentals attempted to sell its Volvo Rents franchise. In May 2006, Volvo Finance learned that a $24,000 interest payment from World Rentals had been returned unpaid.

On May 30, 2006, facing imminent legal action by Volvo Finance, the World Parties sued Volvo Rents and Volvo Finance in the United States District

4

Court for the Southern District of Florida. Asserting various contract and tort claims, the complaint essentially alleged that Volvo Rents and Volvo Finance made fraudulent representations that induced the World Parties to sign the Franchise Agreements, Loan Documents, and guaranty agreements. Volvo Finance promptly filed counterclaims against the World Parties for, among other things, breach of the Loan Documents. Volvo Finance alleged as the event of default that World Rentals failed to make required payments under the Loan Documents. Volvo Finance did not rely on any breach of the Franchise Agreements. On July 11, the World Parties amended their complaint to add additional claims and a request for declarations that (1) the arbitration provisions in the Franchise Agreements were unenforceable, and that (2) both Volvo entities' right to invoke those arbitration provisions had been waived by Volvo Finance's participation in the litigation.

On August 2, Volvo Rents moved to stay the World Parties' claims against it so that their dispute could be arbitrated under the arbitration provisions contained in the Franchise Agreements. Volvo Finance, on the other hand, sought dismissal, or in the alternative, summary judgment on the claims filed against it. The World Parties then repudiated their amended complaint by (1) agreeing that the arbitration provision was enforceable, and (2) cross-moving to stay all claims and compel

5

arbitration of the entire dispute, including the claims filed by and against Volvo Finance. The district court initially granted the World Parties' cross-motion and ordered arbitration of the entire dispute, but reversed course on reconsideration, concluding that Volvo Finance could not be compelled to arbitrate. Thus, under the district court's orders, the dispute between the World Parties and Volvo Rents would proceed to arbitration, but the dispute between the World Parties and Volvo Finance would be litigated in federal court.

The World Parties timely appealed, seeking an order compelling Volvo Finance to arbitrate. We have jurisdiction over this interlocutory appeal under Title 9 U.S.C. § 16(a)(1)(A) and (B).

II.

Under federal law, arbitration is "a matter of consent, not coercion." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989). Accordingly, a party ordinarily will not be "compelled to arbitrate unless that party has entered into an agreement to do so." Employers Ins. of Wausau v. Bright Metal Specialties, 251 F.3d 1316, 1322 (11th Cir. 2001). We have recognized, however, that "common law principles of contract and agency law" allow a signatory (such as World Rentals) to bind a non-signatory (such as Volvo Finance) to an arbitration agreement under any of five distinct theories: "(1)

6

incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." Id. The World Parties rely primarily on incorporation by reference, but they also argue that Volvo Finance can be compelled to arbitrate under theories of agency, veil-piercing, and estoppel. None of these arguments is persuasive.

## A.

Taking the World Parties' primary argument first, they say that the incorporation provisions contained in two of the fifteen Loan Documents incorporate by reference the arbitration provisions contained in the Franchise Agreements, and thus Volvo Finance can be compelled to arbitrate. This argument actually raises two issues. First, do the incorporation provisions in the Loan Documents incorporate the arbitration clauses in the Franchise Agreements? And second, if so, does the dispute between the World Parties and Volvo Finance fall within the terms of those arbitration provisions? Because these inquiries turn on the meaning of contractual language and the district court did not consider any extrinsic evidence to determine the parties' intent, we review the district court's denial of the World Parties' motion to compel arbitration de novo. See Zaklama v. Mount Sinai Med. Ctr., 906 F.2d 650, 652 (11th Cir. 1990) ("Contract interpretation, generally a question of law, is subject to de novo review on

7

appeal.").[3]

To begin with, two of the fifteen Loan Documents provide: "All . . . documents . . . referred [to] in [this Loan Document] . . . are hereby incorporated . . . in their entirety as if fully restated in this [Loan Document]." Those two Loan Documents also specifically "refer to" the Franchise Agreements by including a breach of the Franchise Agreements among the events of default. Accordingly, the World Parties argue that the plain language of the two Loan Documents incorporates the Franchise Agreements "in their entirety," which of course includes the arbitration provisions in those agreements. Volvo Finance, on the other hand, claims that the incorporation language in the two Loan Documents is simply vague boilerplate that was never intended to incorporate the arbitration provisions in the Franchise Agreements. According to Volvo Finance, an incorporation provision should be read to incorporate an arbitration clause in a separate contract only if the arbitration clause itself is specifically mentioned in the incorporation provision.

It is clear, however, that an arbitration clause can be incorporated even if the relevant incorporation language does not specifically refer to it. Thus, for

_____

[3] The standard of review may be different where the incorporation provision is ambiguous and the district court turned to extrinsic evidence to determine the parties' intent. See Case Int'l Co. v. T.L. James & Co., Inc., 907 F.2d 65, 66-67 (8th Cir. 1990) (reviewing for clear error the denial of a motion to compel based on an incorporation-by-reference theory where the district court examined extrinsic evidence to interpret an ambiguous contract). Because the incorporation provision in this case is unambiguous, we have no occasion to decide this issue.

example, in J.S. & H. Construction Co. v. Richmond County Hospital Authority, 473 F.2d 212 (5th Cir. 1973), a construction subcontract incorporated by reference the "General Conditions" of the prime contract between the owner and the general contractor.[4]  Based on the specific facts of the case (which we have more to say about later), a panel of the former Fifth Circuit concluded that the subcontractor could be bound to arbitrate a dispute under the arbitration clause contained in the General Conditions, even though the incorporation provision in the subcontract did not specifically mention that arbitration clause.  See J.S. & H., 473 F.2d at 215.  Accordingly, we agree with the World Parties that the unambiguous language of the Loan Documents incorporates the arbitration clauses in the Franchise Agreements.

But that is not the end of the matter.  We still must determine whether the

---

[4] Ordinarily, we would look to state law to determine the meaning of the incorporation language in the Loan Documents.  See, e.g., AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co., 242 F.3d 777, 780-81 (8th Cir. 2001) (applying state law to determine whether a non-signatory could be bound under an incorporation-by-reference theory); see also Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1368 (11th Cir. 2005) ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists.").  The parties, however, have not cited relevant state law on this issue.  Indeed, it is not clear to us which state's law should apply, because the locus of the underlying transaction appears to be Florida but at least some of the Loan Documents contain North Carolina choice-of-law provisions.  But in any event, after reviewing Florida and North Carolina case law, we are convinced that both states' laws are fully consistent with J.S. & H. Construction.  See Kaye v. Macari Bldg. & Design, Inc., 967 So.2d 1112, 1113 (Fla. Dist. Ct. App. 2007) (incorporation by reference applied to bind a non-signatory even though the incorporation provision did not specifically mention the arbitration clause in the incorporated document); Booker v. Everhart, 240 S.E.2d 360, 363 (N.C. 1978) (explaining that when a note incorporated other documents by reference, "the parties made the note 'subject to' any and all possible conditions contained in those prior documents").

dispute between the World Parties and Volvo Finance falls within the scope of that arbitration clause. We are convinced that it does not.

To determine what disputes the parties agreed to arbitrate, we begin, as we must, with the language of the applicable arbitration provision, keeping in mind "that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Klay v. All Defendants, 389 F.3d 1191, 1201 (11th Cir. 2004). Here, the relevant arbitration provisions are contained in the Franchise Agreements between World Rentals and Volvo Rents. Those provisions cover "[a]ll disputes, claims, controversies or causes of action arising between Franchisee and Franchisor." (emphasis added). The Franchise Agreements define the term "Franchisor" this way:

> Franchisee [i.e., World Rentals] further acknowledges that: (i) the term "Franchisor" as used in this Agreement shall refer only to Volvo Construction Equipment Rents, Inc. and not Franchisor's parents or affiliates; (ii) Franchisor is not authorized to contract for or on behalf of its parent or any of its affiliates; and (iii) this Agreement shall not be deemed to bind or otherwise restrict Franchisor's parent or any of its affiliates.

Doc. 33 Ex. A2 § 25.4. It could not be clearer that the term "Franchisor" refers "only" to Volvo Rents and not to any of Volvo Rents' "affiliates," such as Volvo Finance. Thus, the applicable arbitration clause unambiguously limits its reach only to disputes between the World Parties and Volvo Rents; plainly and expressly

10

it excludes any disputes between the World Parties and Volvo Finance.

Under circumstances like these, other courts likewise have concluded that the non-signatory - - in this case Volvo Finance - - cannot be compelled to arbitrate. Thus, for example, in <u>Transcontinental & Western Air v. Parker</u>, 144 F.2d 735 (8th Cir. 1944), a widow sued her husband's employer for death benefits promised in her husband's employment contract. The employer sought a stay based on a provision in the contract requiring arbitration of all "disputes 'between Employer and Employee,'" but the Eighth Circuit denied the stay because the widow was "suing in her own right" and could not be considered the "Employee" within the meaning of the contract. <u>Id.</u> at 736. Therefore, the arbitration clause "was not broad enough to cover the present controversy between" the widow and the employer. <u>Id.</u>[5]

Similarly, in <u>Import Export Steel Corp. v. Mississippi Valley Barge Line Co.</u>, 351 F.2d 503 (2d Cir. 1965), a steel company (the "charterer") signed a charter agreement with a ship owner to transport steel coils from Germany to Louisiana. The charter agreement provided for arbitration between the ship owner and the charterer, and the charter agreement was incorporated by reference into bills of lading, which listed an affiliate of the charterer as the notify party. After

---

[5] The Eighth Circuit did not address whether the widow could be compelled to arbitrate under an estoppel theory.

11

the ship foundered off the Azores, the affiliate attempted to invoke the arbitration clause incorporated into the bills of lading. The Second Circuit refused to allow the affiliate to invoke the arbitration clause in the charter agreement because, among other things, that clause unambiguously covered only disputes between the owner and the charterer, not the charterer's affiliates:

> [T]he arbitration clause incorporated in the bills of lading is restrictive in scope in that it is limited to disputes between the [owners] and the [c]harterers. . . . It would be unduly stretching the language of this arbitration clause to say that [the affiliate], a mere notify party, or even owner of the cargo as it claims to be, is one of the [owners] or [c]harterers.

Id. at 505-06 (internal quotation marks omitted).

More recently, the Second Circuit has explained the general point illustrated by Transcontinental & Western Air and Import Export Steel this way: "[A]n arbitration agreement restricted to the immediate parties does not bind a non-party, notwithstanding words of incorporation or reference in a separate contract by which that non-party is bound." Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 47 (2d Cir. 1993) (internal quotation marks omitted).

This rule is consistent with, indeed it is dictated by general principles of arbitration and contract law. To repeat the starting point of our analysis, arbitration is "a matter of consent, not coercion[.]" Volt, 489 U.S. at 479. Generally, courts

12

will not find that a party has consented to arbitration absent a written agreement to do so. To be sure, when interpreting agreements to arbitrate, courts must apply the "liberal federal policy favoring arbitration agreements," but this policy "only applies to disputes that the parties have agreed to arbitrate." Becker v. Davis, 491 F.3d 1292, 1298 (11th Cir. 2007) (internal quotation marks omitted). There is no federal policy favoring arbitration of disputes that the parties have unambiguously excluded from their arbitration agreements. See Volt, 489 U.S. at 478 (explaining that the FAA does not "prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement").

Here, the arbitration provisions in the Franchise Agreements are expressly limited to the immediate parties (Volvo Rents and World Rentals), and they expressly exclude any affiliates such as Volvo Finance. In other words, the language of the arbitration provisions expressly and unambiguously exclude from their scope any dispute between the World Parties and Volvo Finance. Thus, we are constrained to conclude that the district court correctly refused to compel Volvo Finance to arbitrate on an incorporation-by-reference theory. Any other result would not only "unduly stretch," but completely rewrite the arbitration clause, and compel a non-party to arbitrate in the absence of ever having agreed to

13

do so in the first place.[6]  Accordingly, Volvo Finance cannot be compelled to arbitrate with the World Parties.

B.

We turn to the World Parties' three remaining arguments: agency, veil-piercing, and estoppel.  The district court did not address them, and after reviewing the World Parties' submissions to the district court, we doubt that any of them were raised adequately below.  See In re Pan Am. World Airways, Inc., 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it.").  This would be reason enough not to address them at all.  But in any event, none of these arguments has merit.

1. Agency and Veil-piercing.  A non-signatory may be compelled to arbitrate under an agency theory if a signatory signed the arbitration agreement as

---

[6] This is not to say that an arbitration agreement limited to the immediate parties can never be effectively incorporated by reference.  For example, in J.S. & H., in addition to typical incorporation language, the subcontract at issue provided that the subcontractor "agrees to be bound to the Contractor by all of the terms of the agreement between the Contractor and the Owner . . . and to assume toward the Contractor all of the obligations and the responsibilities that the Contractor . . . assumes toward the Owner."  473 F.2d at 214 n.3.  This language may be sufficient to compel a subcontractor to arbitrate with the contractor, because arbitration is surely one of the "obligations" that the contractor assumed toward the owner in the prime contract.  But the incorporation provisions in the Loan Documents at issue here contain no similar language, and thus Volvo Finance cannot be compelled to arbitrate its dispute with the World Parties under an incorporation-by-reference theory.

14

the non-signatory's agent. See Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 777 (2d Cir. 1995) ("Traditional principles of agency law may bind a nonsignatory to an arbitration agreement."). Likewise, a non-signatory may be compelled to arbitrate if it so dominated a signatory that it is appropriate to pierce the signatory's corporate veil and hold the non-signatory liable on the contract containing the arbitration provision. See, e.g., Fisser v. Int'l Bank, 282 F.2d 231, 234-35 (2d Cir. 1960). Whether either of these theories applies turns on the specific facts of each case. See, e.g., Nitro Distrib., Inc. v. Alticor, Inc., 453 F.3d 995, 999 (8th Cir. 2006) (affirming denial of motion to compel arbitration because the petitioner failed to demonstrate that the signatory "had actual or apparent authority to act on behalf of" the non-signatory); Thomson-CSF, 64 F.3d at 777 (rejecting the petitioner's veil-piercing argument for similar reasons).

Under Section 4 of the Federal Arbitration Act, the district court (or a jury as the case may be) must resolve any disputed facts and determine whether the applicable agency or veil-piercing tests have been met prior to compelling a non-signatory to arbitrate. See 9 U.S.C. § 4; Thomson-CSF, 64 F.3d at 778 (refusing to compel arbitration because the moving party failed to present sufficient facts in support of its veil-piercing argument); see also Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992) ("If a party has not signed an

15

agreement containing arbitration language . . . <u>the district court itself</u> must first decide whether or not the non-signing party can nonetheless be bound by the contractual language.").

Here, the World Parties presented no evidence supporting the claims that Volvo Rents acted as the agent or alter ego of Volvo Finance. Indeed, the only relevant evidence we can find in this record is an affidavit - - provided by Barry Natwick, President and Chief Executive Officer of Volvo Rents - - that squarely refutes the World Parties' allegations. Thus, even if the World Parties' agency and veil-piercing arguments had been adequately presented to the district court (and they were not), there is no evidentiary basis for compelling arbitration under either.

2. <u>Estoppel</u>. Estoppel also may bar a non-signatory from avoiding arbitration if the non-signatory relies on a contract containing an arbitration clause. <u>See</u> <u>Blinco v. Green Tree Serv., LLC</u>, 400 F.3d 1308, 1312 (11th Cir. 2005) (per curiam); <u>McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.</u>, 741 F.2d 342, 344 (11th Cir. 1984). Here, Volvo Finance's counterclaim against the World Parties relies on World Rentals' failure to make timely payments under the Loan Documents; Volvo Finance does not rely on a breach of the Franchise Agreements. Thus, an estoppel theory cannot apply because Volvo Finance is not relying on the Franchise Agreements to make out its claim.

16

Relying on cases allowing <u>non-signatories</u> to invoke arbitration clauses against <u>signatories</u> - - <u>see</u> <u>Becker v. Davis</u>, 491 F.3d 1292, 1304 (11th Cir. 2007); <u>MS Dealer Serv. Corp. v. Franklin</u>, 177 F.3d 942, 948 (11th Cir. 1999) - - the World Parties also suggest that Volvo Finance should be compelled to arbitrate based on the World Parties'allegations that Volvo Finance (a non-signatory) and Volvo Rents (a signatory) were involved in a "common scheme" to defraud. Notably, however, none of our cases allow a <u>signatory</u> to force a <u>non-signatory</u> into arbitration simply because the signatory alleges a common scheme involving the non-signatory and another signatory. This distinction makes sense because the non-signatory never agreed to arbitrate anything. To nevertheless allow the non-signatory to be dragged into arbitration against its will would eviscerate the requirement that arbitration be based on consent, not coercion. Moreover,"[t]he distinction between signatories and non-signatories is important to ensure that short of piercing the corporate veil, a court does not ignore the corporate form of a non-signatory based solely on the interrelatedness of the claims alleged." <u>E.I.</u> <u>DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.</u>, 269 F.3d 187, 202 (3d Cir. 2001); <u>see also</u> <u>Nitro Distrib.</u>, 453 F.3d at 999; <u>InterGen</u> <u>N.V. v. Grina</u>, 344 F.3d 134, 145-46 (1st Cir. 2003); <u>Thomson-CSF</u>, 64 F.3d at 779. Accordingly, the fact that the World Parties simply alleged a common

17

scheme is not enough to force Volvo Finance into arbitration.

In short, the arbitration clauses in the Franchise Agreements between World Rentals and Volvo Rents do not require arbitration of any dispute between the World Parties and Volvo Finance, and, on this record, there is no non-contractual basis for forcing Volvo Finance into arbitration. Accordingly, we affirm the district court's denial of the World Parties' motion to compel Volvo Finance to arbitrate.[7]

**AFFIRMED.**

---

[7] Because we conclude that there is no basis for compelling Volvo Finance to arbitrate, we have no occasion to reach Volvo Finance's alternative argument that the World Parties waived their right to compel arbitration by initiating and participating in the litigation before the district court.