[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13266

Non-Argument Calendar

_____

DIANE FISHER,

Plaintiff-Appellant,

versus

PNC BANK, N.A.,
PNC INVESTMENTS, LLC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cv-22974-FAM

_____

Before ROSENBAUM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

We are asked to decide in this appeal whether the district court properly granted a motion to compel arbitration of Diane Fisher's claims against PNC Bank, N.A. and PNC Investments, LLC. Fisher alleges that PNC Bank mishandled funds in an account held by Fisher and her deceased mother, Rose Charlap. She filed a five-count complaint against PNC Bank in the United States District Court for the Southern District of Florida alleging (1) civil theft, (2) aiding and abetting civil theft, (3) negligence, (4) fraudulent concealment, and (5) aiding and abetting fraud. The district court compelled arbitration, relying on an application for a joint Brokerage Account, signed by Fisher, that contained an arbitration clause. For the reasons given below, we affirm.

## I.    BACKGROUND

Fisher and her mother co-owned an investment account at Royal Bank of Canada ("RBC"). In 2011, Charlap's health began declining, and she decided to transfer the RBC account to PNC Bank. Charlap notified PNC Bank that over $150,000 of the money in the investment account belonged to Fisher, and that Fisher would remain a co-owner of the account. To transfer the account, Charlap signed a brokerage account application that contained an arbitration clause:

> You agree that all controversies that may arise between PNC Investments and its correspondent firm, their respective agents, representatives, affiliates, employees and you concerning any transaction, the construction, performance, or breach of this or any other agreement between us, whether the transaction or agreement is entered into, prior, on, or subsequent to the date hereof, shall be determined by arbitration.

Fisher, who resides in New York, alleges that she was unaware of the transfer until 2015 when she traveled to Florida to visit her mother, who was living in an assisted living facility in Fort Lauderdale. Fisher then discovered that her brother, Alan, had been withdrawing money from the PNC Bank account, and that Charlap had arranged for a $100,000 loan for Alan upon transferring the account to PNC Bank. Fisher also found out that she was no longer a joint owner of the account, and that Alan had been misusing funds in the account by, among other things, using Charlap's checkbook to send himself thousands of dollars. At that point, Fisher initiated competency proceedings and became the legal guardian of her mother.

Fisher then applied for another brokerage account in order to move her and Charlap's funds to a new account, which she could access and oversee. The 2015 application included a brokerage agreement ("Agreement"), that, like the 2011 application, included an arbitration clause:

All controversies that may arise between you, us and [the broker] concerning any subject matter, issue or circumstance whatsoever (including, but not limited to, controversies concerning any Account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between you, us and [the broker], whether entered into or arising before, on or after the date this Account is opened).

Fisher signed the Agreement with her name as the "Joint Account Owner/Custodian" and her mother's name in the "Account Owner" section. The first page of the application described the "Account Type" as "Guardian." Fisher also signed in another section as the "Primary Applicant." Fisher stated that she opened the account "as the only alternative to being able to take a hold of the funds belonging to my mother and I, that were held in the PNC/PNCI accounts." PNC Bank received the application along with the executed Agreement and opened the account.

Three years after opening the 2015 account, Fisher filed a complaint against PNC Bank in the United States District Court for the Southern District of Florida alleging (1) civil theft, (2) aiding and abetting civil theft, (3) negligence, (4) fraudulent concealment, and (5) aiding and abetting fraud. PNC Bank filed a motion to compel arbitration, which the district court granted. Fisher timely appealed.

## II.    STANDARD OF REVIEW

We review a district court's order granting a motion to compel arbitration *de novo*. *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1293 (11th Cir. 2014).

## III.    DISCUSSION

The district court granted PNC Bank's motion to compel, holding that because Fisher signed the Agreement containing an arbitration clause, and Fisher was bound by the arbitration clause because Fisher did not allege that PNC Bank fraudulently obtained her signature. Fisher argues she is not bound by the arbitration clause because (1) she signed the Agreement not in her personal capacity, but as her mother's guardian, and (2) there is no arbitrable issue between Fisher and PNC Bank because her claims do not arise from the Agreement. We disagree. For the reasons given below, we hold that Fisher is bound by the arbitration clause contained in the Agreement and affirm the district court.

### A.    *Fisher is Bound by the Arbitration Clause*

The Federal Arbitration Act was "designed to promote arbitration," and the Supreme Court describes it as a "national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (citing *Buckeye Check Cashing*, 546 U.S. 440, 443 (2006)). The purpose of the Act is to place arbitration agreements on the same footing as any other contract. *See Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989) (citing *Scherk v. Alberto-*

*Culver Co.*, 417 U.S. 506, 511 (1974)). Accordingly, arbitration agreements are ordinarily fully enforceable absent a showing of fraud, duress, or unconscionability. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985). The federal policy favoring arbitration does not require that we disregard traditional principles of state contract law, which govern the enforceability of arbitration agreements by or against a non-signatory. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009).

Fisher argues that the district court erred in applying the arbitration clause because she is a non-signatory to the agreement. Specifically, she argues that she signed the Agreement not in her personal capacity, but as her mother's legal guardian. We disagree. The arbitration clause in the Agreement states that it applies to "[a]ll controversies that may arise between you, us and [the broker]." Fisher applied as a "Joint Account Owner/Custodian" and initialed, signed, and dated the Agreement. Fisher has not alleged that her signature was nonvoluntary or otherwise fraudulently obtained. Even though Fisher opened the account for her mother, we interpret the word "you" in the clause to refer to Fisher as the person who applied for the account and signed the application. Accordingly, Fisher is bound by the arbitration clause.

Fisher cites our discussion in *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F. 3d 1240, 1246 (11th Cir. 2008). But that decision does not help her cause. As an initial matter, *World Rentals* discussed theories under which a non-signatory could be compelled to arbitrate. *Id.* at 1246. As discussed above,

Fisher is a signatory of the 2015 Agreement. Furthermore, in *World Rentals*, we held that an arbitration clause did not apply to certain third parties because the clause's language "expressly and unambiguously exclude[d] from their scope any dispute" between those parties and was instead limited to disputes between a franchisor and franchisee. *Id.* Here, the arbitration clause contains no language specifically carving out Fisher.

Fisher also relies on *Transcontinental & Western Air, Inc. v. Parker*, 144 F.2d 735 (8th Cir. 1944), which is similarly distinguishable. There, the court declined to compel arbitration between a signatory's widow and his former employer because the arbitration clause at issue expressly stated that it applied only to disputes between the "employer and employee." *Id.* Again, Fisher is a signatory. And the arbitration clause at issue here makes no such narrow specification—it covers all disputes between "you, us, and [the broker]." Accordingly, there is "no basis for assuming that the clause as written does not fully and accurately express the intent of the parties to the contract" to arbitrate. *Id.*

Even if Fisher could establish that she was a non-signatory, she would be equitably estopped from denying the arbitration clause. *See Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.,* 845 F.3d 1351, 1354 (11th Cir. 2017). Under Florida law, a non-signatory cannot seek benefits under an agreement while "simultaneously attempting to avoid the burden of the policy's arbitration provision." *Allied Prof'ls Ins. Co. v. Fitzpatrick*, 169 So. 3d 138, 142 (Fla. Dist. Ct. App. 2015) (citing *Bahamas Sales*

*Assoc., LLC v. Byers*, 701 F.3d 1335 (11th Cir. 2012)). That is what Fisher seeks to do here. She wishes to hold PNC Bank accountable for breaching duties that arise from her ownership of the account while avoiding the burden of the arbitration clause.

### B.    *The Arbitration Clause Covers Fisher's Claims*

We also reject Fisher's argument that her claims are not covered by the 2015 arbitration clause. The arbitration clause states that it concerns "any subject matter, issue or circumstance whatsoever, including, but not limited to, controversies concerning any Account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement." The clause explicitly contemplates disputes arising from other issues or agreements "whether entered into or arising before, on or after the date this Account is opened."

Fisher contends that she did not intend to arbitrate claims arising from the bank account transferred from RBC to PNC Bank. She argues that reading the arbitration clause to cover these claims would render the arbitration clause without limit. Again, we disagree. Fisher entered the Agreement containing an arbitration clause covering "[a]ll controversies" between Fisher, PNC Bank, and the broker. "All controversies" is broad enough to encompass the issues forming the basis of this litigation. Moreover, Fisher's claims all revolve around PNC Bank's alleged misuse of her funds and her mother's funds. They arise out of the account agreement,

21-13266                Opinion of the Court                    9

and Fisher's argument that her claims are unrelated to the agreement is unfounded.

## IV.    CONCLUSION

After a careful review of the record, we affirm the district court's order compelling arbitration.

**AFFIRMED.**