PER CURIAM.
Appellants, Mr. and Mrs. Reider, brought this action in the trial court seeking return of certain deposit moneys paid toward the *107 purchase of two condominium units which were to be constructed by Appellee, P-48, Inc. and for recovery of expenses incurred by Appellants in improving the units in preparation for closing the transaction. Appellants also sought to have a vendees lien enforced against the property to secure such repayment. Appellee filed a counterclaim seeking damages incurred as a consequence of Appellants’ alleged refusal to close the sale of the units. The case was tried by the court, sitting without a jury. The court found that Appellants breached their contract to purchase the units by failing to close on the date specified by Appel-lee. The final judgment upheld the operation of the liquidated damages clause of the contract and ruled that Appellants recover nothing from Appellee. The court further ruled that in view of its holding that Appel-lee would be permitted to retain the deposit moneys under the liquidated damages clause, that Appellee should recover nothing from Appellants on its counterclaim.
We find that the evidence does not support the trial court’s finding that Appellants breached their contract by failing to close the purchase of the condominium units on the date specified by Appellee. We further find that even if Appellants had so breached said contract, Appellee was not in sufficiently “strict compliance” with its contract obligations as would entitle it to retain the deposit moneys.
In 1971 and 1972, Mr. and Mrs. Reider, Appellants, agreed to purchase two adjoining units (# 104 and # 105) in a condominium development known as the “Atlantis” being built by the seller, Appellee P-48, Inc. Appellants agreed to pay a purchase price of $39,800.00 for Unit # 105 and a purchase price of $18,200.00 for Unit # 104. Appellants paid a deposit of $7,900.00 towards the purchase price of Unit # 104.[1] At the time of the said contracts, construction of the units had not yet commenced. The units were to be constructed in accordance with certain plans and specifications and construction was commenced in the fall of 1972. Substantial delay in the anticipated completion of the project was encountered by reason of difficulties which the Appellee had with its general contractor regarding correctness and quality of construction. In March, 1974, Appellee sent letters to the purchasers of the various units in the Atlantis, including Appellants, advising them that a certificate of occupancy on the Altantis had been obtained and that, although delays in completion had “been very frustrating to all of us” and that “even now there are items in some apartments and in the common areas to be completed”, Appellee wished to close the sale of the units immediately. In response, Appellants advised Appellee by letter dated March 20,1974, that while they did not wish to unnecessarily delay closing, there were a number of items in need of repair before they would agree to close. Subsequently, Appellee advised Appellants by letter dated May 30, 1974 that Appellee had “completed all of the repairs which it expects to make on Unit # 104-105” and stated that unless certain closing documents were executed by Appellants and checks tendered by June 4, 1974, Appellants would be considered in default and the units would be immediately listed for resale. By letter dated May 31, 1974, Appellants advised Appellee that they were prepared to close provided that certain designated construction defects were reme1 died. In the alternative, Appellants advised Appellee in that letter that they would agree to close if Appellee would agree to place $2,500.00 in an escrow account of Ap-pellee’s attorney to assure that the necessary repairs would be properly made, with provision that in the event that the repairs listed were not made within 30 days of closing, Appellants would be able to direct that the escrow funds be disbursed for the necessary repairs. Having received no response to their May 31, 1974 letter, Appellants again wrote to-Appellee on June 24, 1974, reiterating Appellants’ desire to close on the conditions set forth in the previous letter. Again, Appellee failed to respond to Appellants’ letter. Finally, on July 26, *108 1974, Appellants wrote to Appellee and demanded return of the deposit money. Ap-pellee failed to do so and Appellants instituted this action.
The trial judge found in his Findings of Fact that the subject units were ready for closing on May 1, 1974 and that Appellants defaulted in refusing to close at that time. Such finding is not supported by the evidence. In fact, Appellee tacitly concedes such since Appellee’s position on appeal appears to be that the units were ready for closing on June 4, the date by which Appel-lee demanded in its May 30 letter that Appellants return the necessary closing documents and checks. Appellee contends on appeal that Appellants were in default by reason of their failing to close by June 4.
We find that, in view of the condition of the subject premises on June 4,1974, Appellants had no duty to close the purchase on that date as demanded by Appellee. Accompanying Appellants’ above referred May 31, 1974 letter to Appellee was an itemized list of defects and deficiencies in these units which remained to be remedied. Included in such “punchlist” were several substantial items which the evidence showed were still unresolved on June 4. One of the problems centered around the condition of the sliding glass doors on the oceanfront side of the units. The doors did not meet specifications, and they rattled and whistled whenever there was an ocean breeze. This was a problem throughout the Atlantis. In fact, an obviously frustrated Appellee/Developer wrote to his general contractor on December 18, 1974:
“The Directors of the Atlantis Association are complaining strenuously about the delay. Their complaints are very much in order. When the wind blows from an eastward direction the noise from the sliding glass doors is very annoying and they should not be expected to endure this noise any longer.”
It was also shown that the sliding glass doors installed at the Atlantis did not meet structural load specifications. The doors failed a structural load test administered in September, 1974 and the defects in such doors were not remedied until mid 1975. Also, air conditioning ducting into certain areas of the units as called for in the plans and specifications was deleted by Appellee as a cost cutting measure resulting in insufficient cooling. The parking stall for Unit # 104 was not constructed in accordance with the minimum space requirement of the applicable city ordinances and presented a substantial problem in accommodating a standard size automobile. A closet was so reduced in size inadvertently by the carpenters as to make it virtually unusable. The wash basin in the dressing area to the master bedroom was improperly installed. It is clear from the evidence that these as well as several other deficiencies were as yet unresolved on June 4, 1974. In addition, there were a number of defects of a substantial nature in the condominium common areas which remained unresolved on that date. Moreover, the person who was Ap-pellee’s manager at the Atlantis in June, 1974, testified that units 104 and 105 were not ready for closing in the first week of June, 1974, that she would not have accepted them, that Mr. Reider was the only one who could not move into his unit, that Mr. Reider “was having more trouble than anyone” and that she sympathized with Mr. Reider because of the problems he was having.[2]
The trial court held that Appellants’ complaint sought to rescind the contracts and, in so doing, “placed upon themselves the much greater burden of proving equitable grounds to support rescission.” The trial court went on to cite the principle of law that “mere breach of a contract, or a partial failure of consideration, will not support an action for rescission, the requirement being that the party seeking rescission show an independent equitable ground for rescission in addition to these elements”. The learned trial judge failed to apply the *109 correct principles of law applicable to this type of case. The contract in the case at bar was executory.[3] Further, it is clear from the contracts between the parties that the Appellants did not agree to pay the purchase price, other than the requisite deposits, for the units until the stipulated improvements had been accomplished. The promise of the Appellants to pay the purchase price and the promise of the Appellee to construct the units in accordance with the plans and specifications were dependent covenants to be concurrently performed.[4] The final accomplishment of the improvements as agreed between the parties was an essential part of the consideration supporting Appellants’ promise to pay the balance of the purchase price. A vendee’s refusal to pay out his money in strict performance of his own covenants when the vendor cannot or will not perform acts to be concurrently done does not constitute a default by the vendee. Sun City Holding Co. v. Schoenfeld, 97 Fla. 777, 122 So. 252, 254 (1929).
Appellee had no right to require Appellants to close the purchase of the units on June 4, particularly without satisfactory assurance that the remaining substantial deficiencies would be remedied. By ignoring Appellants’ repeated requests over a substantial period of time to put the units in a posture for closing or to make appropriate provision therefor, Appellee abandoned the contracts, thereby giving Appellants the right to demand return of the moneys which they had already paid. In Cox v. Grose, 97 Fla. 848, 122 So. 513, 515 (1929), the court stated:
“Where one of the parties to a contract unjustifiably abandons it, and refuses or fails to proceed with it, such action alone may not constitute a technical rescission of the contract. Such conduct, however, may be treated as an offer to rescind, and may and generally will justify the other party in declaring a rescission of the contract and in insisting upon a restoration of the status quo, provided such other party is not himself in inexcusable default.”
******
“Prima facie a sufficient period had elapsed to evince a purpose on the part of the defendant not to complete the contract, but to abandon it. Thus there had occurred prima facie an abandonment, which was tantamount to an offer to rescind on the part of Grose, the vendor-defendant, followed by the bringing by Cox, the vendee, of this action in general assumpsit to recover the earnest money. Such action on the part of the plaintiff constituted an election on his part to dis-affirm the contract, which he was prima facie entitled to do under the circumstances, thereby effecting a rescission.”
Under the law, Appellants had the right to affirm the contracts and sue Appellee for damages, or to disaffirm the contracts and bring an action to recover back the payment that had been made, but they were not limited to such remedies. They had the right, at their election, to seek a rescission and cancellation of the contracts and to an adjudication of a lien against the property for the amount of the purchase price already paid. John Ringling Estates v. White, 105 Fla. 581, 141 So. 884 (1932); Resnick v. Goldman, 133 So.2d 770 (Fla. 3rd DCA 1961). The trial court was correct in construing Appellants’ Complaint as one invoking the latter remedy, that is, rescission and cancellation. The Complaint sought to invoke the equitable powers of the trial court including the imposition of a vendee’s lien on the subject property. In Resnick v. Goldman, supra, the court stated:
“Equity takes cognizance of suits for rescission of executory contracts to convey, and a claim by a purchaser for return of a down payment under such a contract is *110 properly brought in equity where to aid recovery a lien may be claimed and imposed on the property involved.”
See also O’Steen v. Thomas, 146 Fla. 73, 200 So. 230 (1941). Various kinds of expenses incurred by the purchaser may also be awarded as damages in such a suit. Sundie v. Lindsay, 166 So.2d 152 (Fla. 3rd DCA 1964); Resnick v. Goldman, supra.
Even if Appellants were properly deemed to have been in default for failure to close the purchase of the units on June 4, 1974, it was error for the trial court to find that Appellee was entitled to retain the deposit money under the liquidated damages clause of the contracts.[5] In Picard v. Burroughs, 304 So.2d 455, 456 (Fla. 1st DCA 1974), this Court stated:
“In order to successfully invoke a forfeiture provision in a contract for the sale and purchase of real estate, the party seeking the forfeiture must (in the absence of a specific provision in the contract to the contrary) first prove strict compliance with those provisions of the contract required to be complied with by the party seeking the forfeiture, or else prove that such compliance has been either excused or prevented by the party against whom the forfeiture is sought. There must, of course, also be proof that the party against whom the forfeiture is sought has defaulted under the terms of the contract and that such default was neither excused nor caused by the party seeking to invoke the forfeiture provision. The evidence in the case sub judice clearly reveals that neither party complied with the provisions of the purchase and sell agreement.” [Emphasis Supplied]
For the reasons previously set forth in this opinion, Appellee can hardly be said to have strictly complied with his obligations under the contracts.
The Final Judgment below is reversed and this case is remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED.
■ ERVIN, Acting C. J., MELVIN, J. and NIMMONS, RALPH W., Jr., Associate Judge, concur.

. Subsequent to the original contracts, Appellants and Appellee agreed to certain changes so as to combine the two adjoining units into one residence.

. There was testimony at the trial that this former manager of the project had either quit or been terminated.

. The distinction between executory and executed contracts as to the right of rescission is discussed in Musselwhite v. Oleson, 60 Fla. 342, 53 So. 944 (1910); see also Walker v. Close, 98 Fla. 1103, 125 So. 521, 528 (1929) and 7 Fla. Jur., Contracts, Section 171.

. Covenants are always considered dependent unless the contrary intention appears. Walker v. Close, supra, fn. 3.

. The liquidated damages clause of the subject contract provides, in pertinent part, as follows:
“If Purchaser defaults in the performance of his obligations hereunder, then Seller may, at its election, terminate this Agreement. In such event all advance deposits paid by the Purchaser aforesaid shall be retained by or for the account of the Seller as consideration for the execution of this Agreement and in full settlement of any claims for damages, and the Seller, and any escrow holder, shall be relieved of all obligations hereunder.”