In the Matter of HALLMARK BUILDERS, INC., Debtor.

HALLMARK BUILDERS, INC., Plaintiff,

v.

Allen DAWSON and Barbara Dawson, Defendants.

Bankruptcy No. 84–551–ORL–BK–AP.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Aug. 21, 1986.

See also, Bkrtcy., 57 B.R. 121.

T. Kevin Knight, Orlando, Fla., for debtor/plaintiff.

Allen E. Dawson, Barbara S. Dawson, Cape Coral, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Complaint filed by Hallmark Builders, Inc., (Debtor) the Plaintiff in the above-styled adversary proceeding against Allen E. Dawson and Barbara S. Dawson (Dawsons), the Defendants. The nature of this adversary proceeding is a breach of contract action seeking damages and the Dawson's have counterclaimed against the Debtor for breach of contract and seek damages for failure to perform; specifically for monies originally paid to the Debtor at time of contract formation. The facts relevant to a resolution of the matter under consideration may be summarized as follows:

At the time relevant to the matter under consideration, the Dawsons were the owners of a residential lot located at Cape Coral, Florida. The Debtor was and has been for some time a general contractor engaged in constructing residential homes in the area, mostly on lots owned by the home buyers.

The contract to build the home between the Debtor and the Dawsons was entered into April 23, 1984 (Debtor's Exh. # 3). According to the contract, the Debtor was to build a residential house for the total price of $68,076.00. The Dawsons paid $1,000 as a down payment toward the purchase price. The house was to be completed six months from the date of the contract. It is without dispute that the house was never built by the Debtor. Paragraph 18 of the contract provided for liquidated damages in the event there was a breach of the contract by the buyer. According to this provision, if the Dawsons breached the contract they were to forfeit their deposit. In addition, they would be liable to the builder 5% of the total contract price before construction and 10% if the home was built. (Debtor's Exh. # 3).

The corners of the lot were staked on May 20, 1984 by Cadastial Surveyors, Inc. (Debtor's Exh. # 6), and the lot was to be staked-out later by using these corner markers as reference points. It appears that the stake-out of the house was not done until late June. A separate draw

schedule in the contract indicates that the draw amount due at time of stake-out was $7,000.00. The contract further provides in paragraph 3, line 5 that: "The amount set forth in the draw schedule shall be paid by PURCHASER to SELLER within two (2) days of SELLER'S written certification to PURCHASER that the work as required for any particular draw requested has been performed." (Debtor's Exh. # 3). The record reveals that no written notice of the stake-out was ever sent to the Dawsons by the Debtor. As a matter of fact, the Debtor did not contact the Dawsons until August when Andrew Nutt, Vice-President of the Debtor in charge of purchasing and construction, called the Dawsons by telephone and requested the $7,000.00 stake-out draw. It should be noted that at the time of this call the Debtor had already filed a Chapter 11; the Chapter 11 case was filed on June 28, 1984.

At the time the Debtor contacted the Dawsons in August, the Dawsons had contracted with Tower Building Corporation (Tower) on July 16, 1984 (Debtor's Exh. # 4) to build their house. In fact, Tower had broken ground on the lot and framing of the house had started. Prior to contracting with Tower, the Dawsons diligently attempted to contact the Debtor on several occasions, but the Debtor's phone was not being answered and the Dawsons discovered during these attempts that the Debtor's offices were closed. Moreover, the first notice that the Dawsons received concerning the Chapter 11 of the Debtor was through word of mouth from other building contractors. The Debtor never provided any notice to the Dawsons of filing the Chapter 11 and made no contact with them from early June until late August when Andrew Nutt phone demanding the $7,000.00 draw for the stake-out.

The record reveals that the stake-out of the Dawsons' lot by the Debtor was improperly done. It appears that the stake-out was staked back three feet from where it should have been staked. Gary Miller, a former employee of the Debtor, informed the Dawsons of the problem with the stake-out. There was some testimony of notice in the form of a letter mailed by the Dawsons to the Debtor indicating that they were in default on the contract, however, no letter was produced in evidence and the Court must reject this testimony as proper evidence of notice to the Debtor of alleged contract breach as required by the contract.

Finally, the Debtor claims that the Dawsons improperly used their building plans when Tower built their home. While it is true that the Dawsons had seen the plans, it is equally clear that they never had physical possession of them, and that they were, at all times, in the Debtor's possession. There is no doubt that the finished house built by Tower for the Dawsons is similar to the house depicted on the plans drawn up by the Debtor and this is really not an unusual occurrence. The fact remains, however, that there is no competent evidence in this record to justify the finding that either the Dawsons or Tower copied the Debtor's plans.

■ The contract to build the house was clearly an executory contract. The promise of the Dawsons to pay the purchase price and the promise of the Debtor to build the house in accordance with the plans and specifications were dependent covenants to be concurrently performed. *See Walker v. Close*, 98 Fla. 1103, 125 So. 521, 528 n. 3 (1929). The Dawsons refusal to pay out money in strict performance of their own covenants when the Debtor could not and was not in the position to perform its obligation concurrently does not constitute default by the Dawsons. *Reider v. P-48, Inc.*, 362 So.2d 105, 109 (Fla. 1st DCA 1978) (citing *Sun City Holding Co. v. Schoenfeld*, 97 Fla. 777, 122 So. 252, 254 (1929).

■ Moreover, the Dawsons properly assumed that the contract was abandoned by the Debtor, thereby giving the Dawsons the right to demand return of the monies which they had already paid. In *Cox v. Grose*, 97 Fla. 848, 122 So. 513, 515 (1929), the court stated:

Where one of the parties to a contract unjustifiably abandons it, and refused or

fails to proceed with it, such action alone may not constitute a technical recission of the contract. Such conduct, however, may be treated as an offer to rescind, and may and generally will justify the other party in declaring a recission of the contract and in insisting upon a restoration of the status quo, provided such other party is not himself in inexcusable default.

See also Reider v. P–48, Inc., supra at 109. In fact, a sufficient period of time elapsed to indicate that the Debtor would not complete the construction, but would abandon the same. Based on the foregoing, the Dawsons were clearly justified in hiring another contractor, Tower, to build their house.

■ Even if the Dawsons' actions could somehow be construed to have placed them in default for their failure to close, the Debtor would not be entitled to retain the deposit money and seek money damages under the liquidated damages clause of the contract. See supra page 302. As stated by the Court of Appeals in the case of Picard v. Burroughs, 304 So.2d 455, 456 (Fla. 1st DCA 1974):

In order to successfully invoke a forfeiture provision in a contract for the sale and purchase of real estate, the party seeking the forfeiture must (in the absence of a specific provision in the contract to the contrary) first prove strict compliance with those provisions of the contract required to be complied with by the party seeking the forfeiture, or else prove that such compliance has been either excused or prevented by the party against whom the forfeiture is sought. There must, of course, also be proof that the party against whom the forfeiture is sought has defaulted under the terms of the contract and that such default was neither excused nor caused by the party seeking to invoke the forfeiture provision. (Emphasis in original).

The evidence in this case clearly reveals that neither party complied with the provisions of the contract. Specifically, the Debtor never requested payment in writing

of the $7,000.00 draw payment and the Dawsons failed to provide the Debtor notice of its default using satisfactory notice as required by law. Therefore, the forfeiture clause or liquidated damages provision cannot be invoked by the Debtor.

■ The final issue to be considered is whether or not the Debtor is entitled to be compensated on a quantum meruit basis. The concept of quantum meruit is well recognized in this State and allows recovery even if one is not entitled to recover on the original contract if one partially performed that which is beneficial and is accepted by the other party to the contract. See 11 Fla.Jur.2d § 229 (1979); Dean v. Blank, 267 So.2d 670 (Fla. 4th DCA 1972). In this instance, the measure of recovery is the value of the labor and material expended on the part performance. The Dawsons received the benefit of the surveying and staking of the four lot corners by Cadastial Surveyors, Inc. which cost $155.00 (Debtor's Exh. # 6). The Dawson's also received the benefit of the water impact fee which was required to initiate the permit process at a cost of $380.00. It should be noted that the record does not indicate that Tower did not have the benefit of both of these services when the Dawsons' house was constructed. There was insufficient proof in the record to establish the amount of time and money expended by the Debtor in doing additional architectural work on the plans and, moreover, the Dawsons did not receive the benefit of them as Tower used its own plans to build the house.

■ In sum, the Debtor is not entitled to the liquidated damages sought from the Dawsons because the Debtor was in default and in essence abandoned the contract which resulted in breach. The Debtor is entitled to a quantum meruit recovery of $435.00. The Dawsons are entitled to the return of their $1,000.00 deposit to the Debtor on their counterclaim. The amounts being offset result in $565.00 damages to the Dawsons as a result of the Debtor's breach of contract.

Based on the foregoing, this Court finds that the Debtor is not entitled to recover

damages under the liquidated damages provision of the contract and the Dawsons are entitled to recover $565.00 in damages resulting from breach of contract which represents the amount of damages after computing an offset of the Debtor's quantum meruit recovery.

A separate final judgment will be entered in accordance with the foregoing.