983 So.2d 684 (2008)
William E. HAND and Jane L. Hand, Appellants/Cross-Appellees,
v.
GROW CONSTRUCTION, INC., a Florida Corporation, Appellee/Cross-Appellant.
No. 1D07-3313.
District Court of Appeal of Florida, First District.
June 5, 2008.
*685 Michael F. Coppins of Coppins Monroe Adkins Dincman & Spellman, P.A., Tallahassee, for Appellants/Cross-Appellees.
Fred M. Johnson and William D. Horgan of Johnson, Farrell & Mabile, LLC, Tallahassee, for Appellee/Cross-Appellant.
LEWIS, J.
In this action for breach of a real estate contract, William and Jane Hand, Appellants, seek review of a final order of summary judgment issued in favor of Grow Construction, Inc., Appellee, together with an order taxing costs and attorney's fees in Appellee's favor. On cross-appeal, Appellee seeks review of the portion of the final judgment denying its request for enforcement of the contract's liquidated damages provision. Appellants argue that the trial court erred, as a matter of law, in interpreting the contract and, alternatively, that even under the trial court's interpretation of the contract, genuine issues of material fact remained, rendering summary judgment improper. Because we hold that the trial court interpreted the contract incorrectly, the remaining issues in this case are moot. We reverse the Summary Final Judgment, together with the Final Judgment Taxing Costs and Attorneys' Fees, and remand the case for further proceedings consistent with this opinion.
Under the parties' contract, Appellee had a duty to construct a building free from defects, and Appellants had a duty *686 to pay, at closing, a specified base price for the building and the real property on which it was to be constructed, along with a price for any applicable options or exceeded allowances. The issue before the trial court was whether Appellee's promise to construct a building free from defects and Appellants' promise to pay the purchase price constituted dependent or independent covenants. The following contract provisions were pertinent to this determination:
5. IMPROVEMENTS. Seller agrees to provide the labor, services and materials necessary to complete the improvements to the Property in a workmanlike manner free from defects. The improvements are specifically described, and will be made in accordance with the plans and specifications attached hereto as Exhibit B and by reference made a part hereof, hereinafter collectively referred to as the Plans and Specifications.
. . . .
11. CLOSING DATE. This transaction shall be closed and Seller shall deliver title to the Property within ten (10) days after the issuance of a certificate of occupancy for the improvements to be made by [Seller].
The contract also provided for an award of attorneys' fees and costs to the prevailing party in the event of any litigation arising from a contract dispute.
After the parties executed the contract, a closing date was established, and the parties appeared for the transaction, but the transaction was not finalized. Thereafter, Appellants filed suit, alleging that Appellee had breached the contract by failing to tender a building free from defects on the closing date and refusing to take corrective measures to bring itself into compliance with the contract. Appellee counterclaimed, alleging that Appellants had breached the contract by refusing to pay the entire purchase price at closing. Subsequently, Appellee moved for summary judgment, arguing that, under paragraph eleven, Appellants had a unilateral obligation to close the transaction once a certificate of occupancy was obtained, irrespective of any defects in construction. For purposes of summary judgment, Appellee admitted that the building contained at least one defect. In response, Appellants argued that paragraphs five and eleven contained dependent covenants, such that Appellants' duty to deliver the remainder of the purchase price depended on Appellee's duty to deliver a building in compliance with the contract specifications and free from material defects, and vice-versa. They agreed that there was no dispute over whether a certificate of occupancy was issued but argued that the issuance of a certificate of occupancy simply established a timeline for scheduling a closing date and did not trigger any unilateral obligations.
The trial court agreed with Appellee, holding that Appellants' "contractual obligation to close arose upon issuance of the certificate of occupancy" and that "this obligation was not dependent upon the building being free from defects." Accordingly, the trial court ruled that Appellants breached the contract and entered final summary judgment for Appellee. The propriety of the trial court's order of final summary judgment depends on whether it correctly concluded that paragraphs five and eleven contained independent covenants, such that Appellants' duty to close the transaction after issuance of the certificate of occupancy was unconditional. Our review is de novo. See Fernandez v. Homestar at Miller Cove, Inc., 935 So.2d 547, 550 (Fla. 3d DCA 2006).
Whenever possible, a contract must be construed according to its plain language. Khosrow Maleki, P.A. v. M.A. *687 Hajianpour, M.D., P.A., 771 So.2d 628, 631 (Fla. 4th DCA 2000). Additionally, to give the proper meaning to a specific contract provision, a court must consider it in context of the entire contract. Id. Stated another way, "an isolated sentence of [a contract] should not be construed alone, but it should be construed in connection with other provisions . . . to arrive at a reasonable construction to accomplish the intent and purpose of the parties." James v. Gulf Life Ins. Co., 66 So.2d 62, 62 (Fla.1953). Moreover, covenants in a contract are "always considered dependent unless the contrary intention appears" in the document. Reider v. P-48, Inc., 362 So.2d 105, 109 n. 4 (Fla. 1st DCA 1978) (citing Walker v. Close, 98 Fla. 1103, 125 So. 521, 528 (1929)).
In Reider v. P-48, Inc., 362 So.2d 105, 109 (Fla. 1st DCA 1978), this Court considered an issue similar to the one presented in the instant case. There, the buyers refused to close a real estate transaction on the set closing date because, although a certificate of occupancy had been issued, the improvements they contracted for had many defects. Id. at 107-08. After refusing to close, the buyers brought suit against the seller, seeking to rescind the contract and recover their deposit money, along with the expenses they incurred in preparing to close the transaction. Id. at 106-07. On appeal, the Reider Court noted that, at the time of closing, the contract was executory and that it was clear from the contract that the buyers "did not agree to pay the purchase price, other than the requisite deposits, for the units until the stipulated improvements had been accomplished." Id. at 109. In reaching this conclusion, the Reider Court focused on the fact that "[t]he final accomplishment of the improvements . . . was an essential part of the consideration supporting Appellants' promise to pay the balance of the purchase price." Id. Accordingly, the Reider Court found the covenants to pay the purchase price and construct the improvements to be dependent. Id. Although the seller in the Reider case had constructed the buildings that were the subject of the contract and had obtained a certificate of occupancy for them, the Reider Court found that the deficiencies in the construction were sufficient to relieve Appellants of their obligation to pay the contract price and entitle them to rescission. Id. The Reider Court held that "[a] vendee's refusal to pay out his money in strict performance of his own covenants when the vendor cannot or will not perform acts to be concurrently done does not constitute a default by the vendee." Id.
Here, the meaning of paragraph eleven clearly and unambiguously sets a date for closing and requires Appellee to deliver title to the real property on that date, but it does not clearly and unambiguously state that Appellants' duty to deliver the purchase price was independent of any other duties in the contract. Paragraph eleven is titled "CLOSING DATE" and begins, "This transaction shall be closed. . . ." Although the trial court and Appellee have read this paragraph as imposing a unilateral "duty to close" on Appellants, the plain language of the paragraph refers passively to the closing of the transaction, not to a specific duty imposed upon a specific party. The natural reading of the first sentence of paragraph eleven is that it sets up a time-frame during which closing was to occur: within ten days of the issuance of a certificate of occupancy. Furthermore, a closing necessarily requires the willing participation of both parties to the transaction. Thus, Appellants' "duty to close," as used by the parties, more specifically means Appellants' duty to provide the purchase price. Nothing in the contract indicates that paragraph eleven should be given a reading other than *688 this natural reading. Moreover, under paragraph eleven, Appellants were to provide the purchase price "for the improvements," which are defined in paragraph five. According to the definition in paragraph five, the improvements Appellants agreed to purchase were to be free from defects.
Appellee argues that the issuance of the certificate of occupancy triggered Appellants' unconditional duty to purchase the building, regardless of whether it had defects. However, if the parties had wanted to use the certificate of occupancy in this way, they could have more clearly articulated that intention. Cf. Fernandez, 935 So.2d at 549 (quoting a contract provision that reads, "The issuance of a Certificate of Occupancy for the Residence . . . will conclusively establish completion of the Residence and Purchaser's unconditional obligation to close.").
The trial court interpreted the contract to mean essentially that Appellants agreed to purchase any building Appellee constructed, irrespective of whether Appellee had performed its duty to construct a building that matched the contract specifications and was free from defects. To reach this interpretation, the trial court relied on Fernandez v. Homestar at Miller Cove, Inc., 935 So.2d 547 (Fla. 3d DCA 2006), and concluded that paragraphs five and eleven contained independent covenants. The Fernandez contract read, in pertinent part, "The issuance of a Certificate of Occupancy for the Residence . . . will conclusively establish completion of the Residence and Purchaser's unconditional obligation to close." Id. at 549. The Fernandez contract also provided that the buyer understood that the "[s ]eller may not be able to obtain all or part of the extras prior to or at the time of closing. . . . but in no event shall [the buyer] hold back any funds at closing or object to final closing with full disbursement to [the seller]." Id. The buyers had selected a swimming pool as an extra option. Id. The swimming pool was not completed at the time of closing, so the buyers did not attend the closing. Id. at 550. The Fernandez court held that the buyers breached the contract. Id. at 551. Fernandez is distinguishable from the instant case for several reasons. First, the language of the closing clause in the Fernandez contract was much more specific about what the certificate of occupancy meant and who had the "duty to close." Second, the buyers in Fernandez were not concerned about a material defect to the residence, which was the heart of the contract. Third, the seller in Fernandez did not admit for the purpose of summary judgment that there was a defect in the building. Fernandez does not govern this case. Instead, the Fernandez opinion merely provides an example of a real estate contract by which the parties expressed a clear intention to create an independent and unconditional duty on the part of the buyers to purchase the building after the occurrence of a certain event. The language of the Fernandez contract contrasts with the language of the instant contract, which lacks specificity and does not evince an intention to create an independent duty on the part of Appellants.
This Court's opinion in Reider is more helpful to the resolution of this issue. Although the Reider Court did not reproduce the contract language in its opinion, so as to provide an exact basis for comparison, the concept of dependent covenants, as explained in Reider, is useful. Under Reider, the central question in determining whether Appellants' duty to supply the purchase price was dependent on Appellee's duty to supply a building free of defects depends on whether the accomplishment of defect-free construction was an essential part of the consideration for *689 the contract. See Reider, 362 So.2d at 109. It is clear from the contract in the instant case that Appellee's promise to construct the improvements was the essential consideration for Appellants' promise to pay the purchase price. Under Reider, Appellants' obligation to pay the purchase price and Appellee's obligation to build the improvements in accordance with the plans and specifications were concurrent duties, even though the certificate of occupancy had been issued. Thus, at some point, the improvements could be considered so defective as to relieve Appellants of their obligation to pay the purchase price.
We reject the trial court's holding that Appellants had an unconditional obligation to pay the entire purchase price. A genuine issue of material fact remains as to which party materially breached the contract. Accordingly, we reverse the final order of summary judgment and remand the case for further proceedings consistent with this opinion. Because the contract authorized attorneys' fees and costs only for the prevailing party, the award of fees and costs is also reversed.
REVERSED and REMANDED.
BENTON and ROBERTS, JJ., concur.