VAN NORTWICK, J.
Perdido Key Island Resort Development, L.L.P. (Perdido Key), David J. Cat-tar, and Joseph Holyfield appeal a non-final order ruling (i) that a claim for breach of a promissory note executed by Perdido Key in favor of Regions Bank, appellee, is subject to arbitration; and (ii) that a mortgage foreclosure claim and a claim under personal guarantees executed by Cattar and Holyfield were not governed by the arbitration provision contained in the promissory note. Appellants contend that the mortgage plainly incorporates the terms of the note and, therefore, it too is subject to the note’s arbitration provision. Additionally, appellants assert that the personal guarantees, through their dependence upon the note, implicitly incorporate the arbitration provision. For the reasons discussed below, we affirm the trial court’s order as to the claim for breach of the personal guarantees, but reverse as to the claim for mortgage foreclosure.
Appellants are a Florida limited liability partnership, Perdido Key, and two affiliated individuals, Cattar and Holyfield. On January 16, 2008, Perdido Key executed a promissory note in favor of Regions Bank in the principal amount of $4,500,000 to secure a loan for a real estate development in Escambia County, Florida. This note identified Perdido Key and H & C Developers of Louisiana, LLC, a Louisiana limited liability corporation (H & C), as the “borrowers.” H & C was Perdido Key’s managing partner. Cattar and Holyfield executed the note on H & C’s behalf as its managing members. Concurrently with the execution of the note, the borrowers executed a mortgage deed and security agreement, and Cattar and Holyfield (guarantors) executed personal guarantees for all obligations of the borrowers to ap-pellee Regions Bank under the note.
The note contains the following arbitration provision:
It is hereby agreed that all disputes, claims and controversies between Borrowers and Lender with regard to this Note and all other obligations of Borrower[s] with respect to the indebtedness represented by said Note shall be resolved through binding arbitration under the Rules of the American Arbitration Association in effect at the time said *3 dispute, claim or controversy arises. The foreclosure upon any collateral securing this Note shall not constitute a waiver of this provision.
The mortgage does not contain an arbitration provision. The mortgage does provide that “all of the terms of [the] Note are incorporated herein by reference as though set forth fully herein.” The guarantees do not contain arbitration clauses and do not incorporate the terms of the promissory note. The guarantees were signed in Cattar’s and Holyfield’s individual capacities and not as representatives of the borrowers.
The borrowers failed to make their balloon payment due October 27, 2009. On May 19,. 2010, the bank served appellants with a complaint for foreclosure and other relief. On August 6, 2010, appellants filed a motion to compel arbitration. On June 24, 2011, the trial court granted the motion to compel arbitration as to the note, but denied the motion as to the mortgage foreclosure and breach of guarantees claims. The trial court ruled that, because the mortgage and guarantees contained no arbitration provisions, claims arising under these instruments were separate from the bank’s claim under the note, and the note’s arbitration provision did not apply to the mortgage and guarantees.
The determination of whether a particular dispute is subject to arbitration is a matter of contract interpretation which is reviewed de novo. State Bd. of Admin. v. Burns, 70 So.3d 678, 680 (Fla. 1st DCA 2011); see O’Keefe Architects, Inc. v. CED Constr. Partners, Ltd., 944 So.2d 181, 185 (Fla.2006). Florida law favors arbitration, often holding that any doubt regarding the arbitrability of a claim should be resolved in favor of arbitration. See, e.g., Nestler-Poletto Realty, Inc. v. Kassin, 780 So.2d 324, 325 (Fla. 4th DCA 1999); United Ins. Co. of America v. Office of Ins. Regulation, 985 So.2d 665, 668 (Fla. 1st DCA 2008); Roe v. Amica Mut. Ins. Co., 533 So.2d 279, 281 (Fla.1988). In further recognition of this preference, we have previously applied the rule of maximum breadth so that arbitration clauses are given the “broadest possible interpretation in order to accomplish the purpose of resolving controversies out of court.” Auchter Co. v. Zagloul, 949 So.2d 1189, 1195 (Fla. 1st DCA 2007).
Although arbitration is favored, as the Florida Supreme Court explained in Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999), “no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate.” See also Regency Group, Inc. v. McDaniels, 647 So.2d 192, 193 (Fla. 1st DCA 1994) (“Only those claims which the parties have agreed are arbitrable may be subject to arbitration.”); Seaboard Coast Line R.R. Co. v. Trailer Train Co., 690 F.2d 1343, 1352 (11th Cir.1982) (holding that the federal policy favoring arbitration “cannot serve to stretch a contract beyond the scope originally intended by the parties”); Miller v. Roberts, 682 So.2d 691, 692 (Fla. 5th DCA 1996) (“The general rule is that where an arbitration agreement exists between the parties, arbitration is required only of those controversies or disputes which the parties have agreed to submit to arbitration.”). Here, the issue is whether the parties intended to arbitrate claims under the mortgage and personal guarantees despite the absence of an arbitration clause within the four corners of those documents.
The Personal Guarantees
The Florida Supreme Court in Seifert enunciated a three prong test to determine when a claim is subject to arbitration. The interpreting court must determine (1) whether a valid written agree *4 ment to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. Seifert, 750 So.2d at 636. The application of a particular arbitration provision to the circumstances surrounding the contract will depend in part on the precise words used in the provision. As the court explained in Seifert:
Not surprisingly, courts have given different meaning to clauses on the basis of the actual terminology used. For example, clauses including all claims or controversies “arising out of’ the subject contract have been considered by some courts to be narrow in scope; i.e., the scope of the arbitration clause is limited to those claims having some direct relation to the terms and provisions of the contract. See Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th Cir.1983); In re Kinoshita & Co., 287 F.2d 951, 953 (2d Cir.1961). Both Mediterranean and Kinoshita hold that claims alleging breach of a separate and unrelated contract, breach of fiduciary duty, and quantum meruit, none of which rely on the interpretation or performance of the contract containing the arbitration clause, are not subject to arbitration as disputes “arising out of’ the contract. These cases reason that where an arbitration clause refers solely to disputes or controversies “under” or “arising out of’ the contract, arbitration is restricted to claims “relating to the interpretation of the contract and matter of performance.” Mediterranean Enters., 708 F.2d at 1464 (quoting Kinoshita, 287 F.2d at 953).
On the other hand, the phrase “arising out of or relating to” the contract has been interpreted broadly to encompass virtually all disputes between the contracting parties, including related tort claims. See Southland Corp. v. Keating, 465 U.S. 1, 15 n. 7, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (involving claims for fraud, misrepresentation, breach of contract, breach of fiduciary duty, and violation of state franchise investment law); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (holding that contractual language “[a]ny controversy or claims arising out of or relating to this Agreement, or breach thereof’ is “easily broad enough to encompass” claim for fraud in inducement of contract). The addition to the phrase “relating to” to the phrases “arising out of’ or “under,” has been construed as broadening the scope of the arbitration provision. See American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir.1996) (characterizing phrase “arise out of or related to” as broad arbitration clause “capable of an expansive reach”).
Id. at 636-37 (footnote omitted); see The Shakespeare Foundation, Inc. v. Jackson, 61 So.3d 1194 (Fla. 1st DCA 2011); and see generally Michael Cavendish, The Concept of Arbitrability Under the Florida Arbitration Code, 82 Fla. B.J. 18, 22 (2008).
Thus, for example in Armas v. Prudential Securities, Inc., 842 So.2d 210, 212 (Fla. 3d DCA 2003), the Third District held that a non-signatory to an arbitration agreement could compel arbitration of the claim against it in part because the arbitration provision in the agreement was quite broad. The provision in Armas provided:
Unless enforceable under applicable law, any controversy arising out of or relating to Client’s Program Assets, to transactions with Client, for Client or to this Agreement or the breach thereof, shall be settled by arbitration ...
Id. (Bold added).
Similarly, in Beaver Coaches, Inc. v. Revels Nationwide R.V. Sales, Inc., 543 *5 So.2d 359, 362 (Fla. 1st DCA 1989), this court held that an arbitration provision requiring “[disputes and other matters in question between Beaver and [Revels] arising out of or relating to this agreement, shall be decided by arbitration ...” was broad in scope and required the arbitration of claims for fraud in the inducement and violation of the Florida Franchise Fraud Act, section 817.416(2)(a)3, Florida Statutes.
The arbitration provision in the note before us, however, is narrowly drawn. It provides:
It is hereby agreed that all disputes, claims and controversies between Borrowers and Lender with regard to this Note and all other obligations of Borrower [s]with respect to the indebtedness represented by said Note shall be resolved through binding arbitration ....
(Bold added). By the express language of this arbitration clause, arbitration may be had in claims against the borrowers: Per-dido Key Island Resort and H & C Developers. The clause does not provide that arbitration may be required in any claim “arising out of or relating to” the agreements or transactions.
As indicated above, Cattar and Holyfield, in their individual capacities, are not signatories to the note. While there is authority by which a non-signatory to an arbitration agreement may be required to participate in arbitration, such authority does not compel arbitration of the personal guarantees in the case under review. See, e.g., Kolsky v. Jackson Square, LLC, 28 So.3d 965, 969 (Fla. 3d DCA 2010); World Rentals and Sales, LLC v. Volvo Constr. Equip. Rents, Inc., 517 F.3d 1240, 1244 (11th Cir.2008).[1] Appellants contend that Cattar and Holyfield are subject to arbitration under the doctrine of equitable es-toppel.
Application of the doctrine of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract. MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir.1999) (concluding that where plaintiff signatory claimed that non-signatory and signatory defendants colluded to defraud her in connection with the purchase of a service contract and to excessively charge her, the claims were based on the same facts and were inherently inseparable such that equitable estoppel applied to compel arbitration); accord Armas v. Prudential Secs., Inc., 842 So.2d 210, 212 (Fla. 3d DCA 2003).
Kolsky, 28 So.3d at 969. We cannot agree that the doctrine of equitable estoppel compels arbitration of the personal guarantees.
In Armas, the reviewing court held that a corporation which was not a party to a contract between another corporation and a securities firm could nonetheless be compelled to arbitrate under the terms of the *6 contract through the doctrine of equitable estoppel. Id. at 212. In that case, both corporations had the same officer. Explained the Armas court: “[e]quitable es-toppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of concerted conduct by both the non-signatory and one or more of the signatories to the contract.” Id. In our current dispute, there is no evidence of “concerted conduct,” fraud or collusion. Here, the guarantors’ obligations were triggered by the failure of the borrowers to make payments on the note. There is not even any allegation of “concerted conduct” through which the guarantors caused the borrowers to breach their obligations under the note. Thus, equitable estoppel is not applicable here.
Construction of arbitration provisions and the contracts in which they appear remains a matter of contract interpretation. Seifert, 750 So.2d at 636; see Seaboard Coast Line R.R. Co., 690 F.2d at 1352. Accordingly, the determination of whether an arbitration clause requires arbitration of a particular dispute necessarily “rests on the intent of the parties.” Seaboard, 690 F.2d at 1348; see also Regency Group, Inc. v. McDaniels, 647 So.2d at 193 (“The agreement of the parties determines the issues subject to arbitration.”). Cattar and Holyfíeld each executed a personal guarantee without an arbitration provision that did not incorporate the terms of the note. Given the narrow scope of the arbitration provision in the note, it cannot be said that the parties to the respective guarantees intended to arbitrate disputes arising under those guarantees. See World Rentals, 517 F.3d at 1245-46 (recognizing that arbitration provision through its narrow language would only apply to the explicit parties to the agreement).
The Mortgage
The mortgage, like the guarantees, does not contain an arbitration provision. The parties to the mortgage, however, are identical with the parties to the note. Further, the mortgage, unlike the guarantees, explicitly incorporates all of the terms of the promissory note “as though set forth fully herein.” Compare World Rentals, 517 F.3d at 1245 (“... an arbitration clause can be incorporated even if the relevant corporation language does not specifically refer to it.”). Therefore, under the plain language of the contract, the claim for foreclosure of the mortgage is arbitrable. Further, as noted, Florida law favors arbitration of disputes. See Nest-ler-Poletto Realty.'
The sentence in the arbitration provision that “[t]he foreclosure upon any collateral securing this Note shall not constitute a waiver of this provision” does not require a different result. Appellee argues that this provision requires that judicial foreclosure is the only remedy available for the mortgage. We do not agree. This provision merely preserves arbitration on the note in the event of foreclosure. But here, through the express incorporation of the note’s terms into the mortgage, the parties plainly agreed to arbitrate claims on the mortgage. See Taylor v. Taylor, 1 So.3d 348 (Fla. 1st DCA 2009) (explaining that in the absence of ambiguity, the actual language of a contract is the best evidence of the intent of the parties to that contract, and the actual language controls).
We recognize that our holding will result in arbitrable causes of action as well as non-arbitrable causes of action. The United States Supreme Court recently affirmed the permissibility of separating ar-bitrable and non-arbitrable claims through adherence to the terms of each distinct agreement, even if such a result could cause “the possibly inefficient maintenance *7 of separate proceedings in different forums.” KPMG LLP v. Cocchi, — U.S. —, 132 S.Ct. 23, 26, 181 L.Ed.2d 323 (Nov. 7, 2011) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)).
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
DAVIS and THOMAS, JJ., CONCUR.

. The parties cite case law from courts in Florida, Louisiana, the Eleventh U.S. Circuit, and the Fifth U.S. Circuit. The mortgage contains a Louisiana choice-of-law provision, despite the secured property being located in Florida. While the choice-of-law issue is not directly before us in this appeal, we note that federal arbitration law is substantively similar to that of Florida and that general contract principles guide our resolution of this dispute. Further, appellants, in their initial brief, state that, for the purpose of this appeal, Louisiana and Florida law are substantively similar to federal law. The Eleventh Circuit in World Rentals addressed a similar issue and summarily dismissed the choice-of-law concerns. World Rentals, 517 F.3d at 1245 n. 4.