# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2242

_____

BECK AUTO SALES, INC.,

    Appellant,

    v.

ASBURY JAX FORD, LLC, and
LISA MARASCO,

    Appellees.

_____

On appeal from the Circuit Court for Leon County.
Karen Gievers, Judge.

June 20, 2018

WINSOR, J.

A car dealership sued its former employee and a competing dealership, alleging that the two conspired to steal business worth millions of dollars. Based on an arbitration agreement between the plaintiff dealership and the former employee (Lisa Marasco), the trial court sent claims against the employee to arbitration. The issue in this case is whether the trial court should have also sent the claims against the competing dealership—a nonparty to the arbitration agreement. The defendant dealership argued that under principles of equitable estoppel, all claims against both defendants should be arbitrated. The trial court disagreed, and we do too.

I.

In 2015, Asbury Jax Ford, LLC, doing business as Coggin Ford, acquired a car dealership in Jacksonville, Florida. The acquired dealership had a contract and longstanding relationship with the City of Tallahassee, to which it sold many vehicles. When Coggin acquired the other dealership, it acquired the Tallahassee contract as well, and it hoped to continue the related sales. But in 2016, the City decided not to renew the contract, instead opening the procurement process and publicly requesting proposals. The Coggin dealership submitted its proposal, but the contract ultimately went to a competing dealership, Beck Auto Sales, Inc., a dealership in Palatka, Florida, and the appellant here.

Two months after the Beck dealership won the new contract, the Coggin dealership sued the Beck dealership and Lisa Marasco. According to the complaint, Marasco, while still working for the Coggin dealership, had actively worked to sabotage Coggin's relationship with the City, hoping to prevent the contract's renewal. The complaint further alleged that Marasco and the Beck dealership acted in a "joint effort" to help the Beck dealership win the contract, which it ultimately did. After Beck took over the contract, it hired Marasco to come on board and manage the new relationship.

The Coggin dealership's complaint included the following seven claims: (1) breach of fiduciary duty (against Marasco); (2) aiding and abetting a breach of fiduciary duty (against Beck); (3) conversion (against Marasco); (4) civil conspiracy (against Marasco and Beck); (5) tortious interference (against Marasco and Beck); (6) unfair competition (against Marasco and Beck); and (7) a violation of the Florida Deceptive and Unfair Trade Practices Act (against Marasco and Beck).

In response to the complaint, Marasco moved to compel arbitration of all claims against her and the Beck dealership. She attached a written arbitration agreement she and the Coggin dealership had entered, in which the two agreed to arbitrate certain disputes relating to Marasco's employment. More specifically, the agreement provided that the "[d]isputes subject to arbitration" would be "all [d]isputes between the parties" as well as "disputes involving any person or entity whose liability or right

2

of recovery derives from a [d]ispute" covered by the agreement. Although the Beck dealership was not a party to the agreement, Marasco argued that the Coggin dealership's claims alleged "substantially interdependent and concerted misconduct" against both defendants. And under the doctrine of equitable estoppel, Marasco argued, *all* claims should be arbitrated. The Beck dealership separately moved to compel arbitration, expressly adopting Marasco's arguments.

The Coggin dealership agreed to arbitrate its claims against Marasco, but it refused to arbitrate those against the Beck dealership. It argued, among other things, that equitable estoppel did not apply because the claims against the two defendants were not truly inextricably intertwined. After a hearing, the lower court denied the Beck dealership's motion to compel arbitration. The court found that Beck was not a party to the arbitration agreement and that the equitable-estoppel argument was insufficient to deprive the Coggin dealership of its right to a jury. Beck now appeals that nonfinal order. We have jurisdiction, *see* Fla. R. App. P. 9.130(a)(3)(C)(iv)[1], and our review is de novo, *see Perdido Key Island Resort Dev., LLP v. Regions Bank*, 102 So. 3d 1, 3 (Fla. 1st DCA 2012).

## II.

Ordinarily, a party cannot compel arbitration under an arbitration agreement to which it was not a party. *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 943 (Fla. 1st DCA 2004). But Florida and federal courts have recognized that principles of equitable estoppel sometimes allow a non-signatory to compel arbitration against someone who *had* signed an arbitration agreement. *Perdido Key*, 102 So. 3d at 5; *see also Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1320 (11th Cir. 2013). Courts have recognized that this can be appropriate (1) when the signatory's claims allege "substantially interdependent and concerted misconduct" by the signatory and the non-signatory or (2) when the claims relate directly to the

---

[1] Because she was a party below, Lisa Marasco is an appellee here. *See* Fla. R. App. P. 9.020(g)(2). But the parties all agree that claims against her are subject to arbitration, and she has not participated in this appeal.

3

contract and the signatory is relying on the contract to assert its claims against the non-signatory. *Koechli*, 870 So. 2d at 944 (citations omitted); *see also Bailey*, 705 F.3d at 1320. Here, the Beck dealership relies exclusively on the first circumstance; it alleges that claims against it and Marasco allege "substantially interdependent and concerted misconduct." And indeed, the thrust of the complaint is that Marasco and the Beck dealership acted in concert to harm the Coggin dealership.

Assuming we agreed with the Beck dealership and concluded the claims were interdependent, our inquiry would not be over. Application of equitable estoppel could address the Beck dealership's non-signatory status—effectively counting it as a signatory—but it would not expand the scope of disputes subject to arbitration. Although Florida law, like federal law, favors arbitration, *Perdido Key*, 102 So. 3d at 3; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), it is still true that "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate," *Perdido Key*, 102 So. 3d at 3 (quoting *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999)). Therefore, even when a non-signatory can rely on equitable estoppel "to access [the arbitration] clause," the non-signatory can compel arbitration only if the dispute at issue "falls within the scope of the arbitration clause." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1355 (11th Cir. 2017) (applying Florida law). And the "scope of the arbitration clause" is a pure matter of contractual interpretation.

The arbitration provision here covered a wide range of disputes, including those "arising before, during or after any employment relationship," and applying "whether or not arising out of or related to [Marasco's] . . . employment." But as noted above, the arbitration provision generally limited its applicability to disputes "between the parties" to the arbitration agreement, meaning it would not reach disputes involving the Beck dealership (a nonparty). Unlike in *Koechli*, when we similarly recognized that the agreement's reach was limited to "any dispute between the [contracting] parties" but nonetheless concluded the non-signatory was effectively a "party," we can conceive of no basis to conclude the Beck dealership was a party to the agreement between

4

Marasco and the Coggin dealership. *See* 870 So. 2d at 945 (holding that based on unique facts of the case, "the word 'party' include[d] appellants, who received rights and were bound to obligations under the [applicable] agreement").[2] At bottom, the Beck dealership was not a party to the arbitration agreement, so disputes with it fall outside of the agreement's general scope.

Acknowledging this problem, the Beck dealership turns to another provision of the arbitration agreement, a provision that broadens the agreement's general scope: "Also subject to arbitration are disputes involving any person or entity whose liability or right of recovery derives from a Dispute that is covered by this Agreement (e.g., partner, agent, subsidiary of parent corporation, affiliate, shareholder, successor or assign of a party)." This provision expands the scope to include disputes involving others, but only to the extent the other parties' liability "derives from" a covered dispute. The Beck dealership therefore argues that its liability "derives from" the dispute between the Coggin dealership and Marasco.

"Derivative liability is similar to vicarious liability in that (1) there is no cause of action unless the directly liable tortfeasor commits a tort and (2) the derivatively liable party is liable for *all* of the harm that such a tortfeasor has caused." *Peltz v. Tr. Hosp. Int'l, LLC*, No. 3D17-428 *2 n.6 (Fla. 3d DCA Apr. 11, 2018) (quoting *Grobman v. Posey*, 863 So. 2d 1230, 1236 (Fla. 4th DCA 2003)); *cf. also* Derivative Liability, *Black's Law Dictionary* (10th ed. 2014) (defining term as "[l]iability for a wrong that a person other than the one wronged has a right to redress"); *Grobman*, 863 So. 2d at 1235-36 (noting that cases of derivative liability "involve

---

[2] The *Koechli* decision is further distinguishable because it relied on the fact that the substantive claims at issue were based on the same agreement that included the arbitration provision. "Because the basis of BIP's claims arise out of or are intimately related to the refurbishment agreement, it would be inequitable to allow BIP both to rely upon the agreement in its action against non-signatories and selectively repudiate it when seeking to resist arbitration." *Id.* at 945. Here, the underlying substantive claims are not based on the arbitration agreement.

wrongful conduct both by the person who is derivatively liable and the actor whose wrongful conduct was the direct cause of injury to another" (citation omitted)).

We conclude that the Beck dealership's liability (if any) does not "derive from" the remaining disputes as that phrase is used in the agreement. The claims are unquestionably related, and they may well ultimately rise or fall together. But we cannot ignore the fact that the arbitration provision used the specific phrase "derives from," rather than a more general term, like, say, "relates to." *Cf. Kroma*, 845 F.3d at 1356 ("If the parties had consented in the arbitration clause to arbitrate any disputes concerning the validity, interpretation, etc., of the contract, instead of consenting to arbitrate only 'disputes arising *between them*' . . ., the Kardashians may have been able to use equitable estoppel . . . . But, as the 'between them' language shows, that is not what the parties to the agreement consented to do in the arbitration provision."). Nor can we ignore the fact that the agreement includes specific examples of liability that *could* derive from other disputes: "(e.g., partner, agent, subsidiary of parent corporation, affiliate, shareholder, successor or assign of a party)." Had the parties sought a broader view of what it means for liability to "derive from" other disputes, they surely would have selected different examples. We cannot ignore the words the drafters chose.

### III.

The Coggin dealership's claims against the Beck dealership are not claims based upon derivative liability; they are based on Beck's own alleged misconduct. That means the claims are not within the scope of the arbitration agreement. And that means the trial court correctly denied the motion to compel.[3]

---

[3] As in *Perdido Key*, we note that this decision "will result in arbitrable causes of action as well as non-arbitrable causes of action." 102 So. 3d at 6. This may yield "'the possibly inefficient maintenance of separate proceedings in different forums,'" *id.* at 6-7 (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011)), but it is the result precedent compels.

6

AFFIRMED.

ROWE, J., concurs; WOLF, J., dissents with opinion.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

WOLF, J., dissenting.

Coggin Ford (Coggin) entered into a broad arbitration agreement with its employee, Lisa Marasco, which encompassed all disputes concerning the relationship between Ms. Marasco and Coggin as well as "disputes involving any person or entity whose liability or right of recovery derives from a Dispute that is covered by [the arbitration] Agreement." Coggin's complaint against Marasco and Beck Auto Sales, Inc. (Beck) is drafted so that the causes of action against both are inextricably intertwined. There is no allegation that Beck acted independently of Marasco. All of the allegations against Beck are derived from Coggin's dispute with Marasco, which is covered by the arbitration agreement. Under these circumstances, Coggin is estopped from asserting that the dispute with Beck in this case is not subject to the arbitration provisions of the agreement.

The majority correctly states the general law concerning application of estoppel to compel arbitration by a non-signatory to the agreement, which I will partially repeat here with emphasis added.

Florida and federal courts have recognized that principles of equitable estoppel sometimes allow a non-signatory to compel arbitration against an opposing party who *was* a signatory to an arbitration agreement. *Perdido Key Island Resort Dev., L.L.P., v. Regions Bank*, 102 So. 3d 1, 5 (Fla. 1st DCA 2012). Courts have recognized that allowing a non-signatory to compel arbitration can be appropriate (1) "when the *signatory's claims allege substantially interdependent and concerted misconduct* by the signatory and the

7

non-signatory"; or (2) "when the claims relate directly to the contract and the signatory is relying on the contract to assert its claims against the non-signatory." *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. 1st DCA 2004) (citations omitted) (emphasis added).

Florida law, like federal law, favors arbitration. *Perdido Key*, 102 So. 3d at 3; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983). However, it is still true that "no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." *Perdido Key,* 102 So. 3d at 3 (quoting *Seifert v. U.S. Home Corp.,* 750 So. 2d 633, 636 (Fla. 1999)). Therefore, even when a non-signatory can rely on equitable estoppel "to access [the arbitration] clause," the non-signatory can compel arbitration only *if the dispute at issue "falls within the scope of the arbitration clause." Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1355 (11th Cir. 2017) (emphasis added) (applying Florida law). The "scope of the arbitration clause" is a pure matter of contractual interpretation.

Thus, we must look at the specific words of the arbitration agreement *in context* and the *specific allegations* of the instant complaint to determine whether the dispute falls within the scope of the arbitration agreement. *Hand v. Grow Constr., Inc.,* 983 So. 2d 684 (Fla. 1st DCA 2008) (finding in order to give proper meaning to a specific contractual provision, courts must consider context of the entire contract).

The subject matter of the arbitration agreement is very broad, effectively covering any dispute between Coggin and Ms. Marasco. The specific language indicates the arbitration provision includes disputes "arising before, during or after any employment relationship," and applying "whether or not arising out of or related to [Marasco's] . . . employment."

A review of the specific allegations of the complaint reveal each count arose out of and was substantially interdependent with Ms. Marasco's relationship with Coggin. It also reveals concerted misconduct between Marasco and Beck, thereby justifying enforcement of the arbitration agreement by the non-signator, Beck. *See Koechli,* 870 So. 2d at 944.

8

The counts against Beck include: Count 2, aiding and abetting a breach of fiduciary duty (the person who was alleged to have been aided and abetted was Marasco); Count 4, civil conspiracy (against both Marasco and Beck); Count 5, tortious interference (against both Marasco and Beck); Count 6, unfair competition (against both Marasco and Beck); and Count 7, a violation of the Florida Deceptive and Unfair Trade Practices Act (against both Marasco and Beck). While arguably Beck could have committed the alleged torts individually, that is not how Coggin chose to allege the tortious conduct in its complaint.

The introductory sentence of the complaint reads: "This *action* arises out of Defendants Marasco and Beck's *joint effort* to obtain a contract . . . though a breach of fiduciary duty, conspiracy, unfair competition, and tortious interference." (Emphasis added). By its very language, the complaint alleges all the counts against Beck were based on interrelated efforts of Beck and Marasco. The complaint does not allege a single action on the part of Beck that was not done in concert with Marasco.

For instance, as to Count 2, aiding and abetting, the complaint alleges "Beck was fully aware of Marasco's breach and, in fact, provided substantial assistance and encouragement to Marasco . . . ." Count 4, civil conspiracy, specifically alleges Beck and Marasco "conspired to interfere with Coggin's relationship with its customers and to violate Marasco's fiduciary duties to Coggin." The gist of Count 5, tortious interference, is that Marasco was "secretly working for Beck" and "ensured Beck's [proposal] would prevail against Coggin." The gravamen of Count 6 is that Marasco provided Beck with Coggin's confidential information in order to help Beck unfairly compete against Coggin. Count 7 is repetitive of the other six counts. None of these counts alleged that Beck committed any act independent of Marasco. Thus, the test of "substantially interdependent and concerted misconduct" by the signatory and non-signatory has been met based on Coggin's own allegations. *Koechli*, 870 So. 2d at 944. As such, the subject of the dispute falls within the scope of the arbitration clause.

The next issue is whether the agreement itself precludes application of the doctrine of estoppel because it reflects the intent of the parties to exclude non-signatories from invoking the

9

arbitration agreement. We cannot consider a single term or sentence in isolation; instead, each provision "should be construed in connection with other provisions . . . to arrive at a reasonable construction to accomplish the intent and purpose of the parties." *Hand,* 983 So. 2d at 697 (quoting *James v. Gulf Life Ins. Co.*, 66 So. 2d 62 (Fla. 1953)).

The arbitration agreement contains the following provision: "Also subject to arbitration are disputes involving any person or entity whose liability or right of recovery *derives from a Dispute that is covered by this Agreement* (e.g., partner, agent, subsidiary or parent corporation, affiliate, shareholder, successor or assign of a party)." (Emphasis added).

Thus, the focus of our analysis should be whether the liability arose from a dispute covered by the agreement and not whether derivative liability exists or whether the right of recovery stems from a breach of the arbitration agreement.

The majority utilizes general law concerning the definition of the term "derivative liability" to determine that Beck could not be an intended subject of this contract because its liability is direct and is not derived from the conduct of another tortfeasor. That analysis ignores that, in context, the language requiring arbitration does not focus on liability derived from another person, but liability that is "derive[d] from a *Dispute* that is covered by this agreement." (Emphasis added). As previously discussed, the subject matter of the claim arises out of a dispute concerning the relationship between Coggin and Ms. Marasco, the central matter covered by the arbitration agreement. As the dispute is framed by Coggin's own complaint, the liability of Beck derives from this dispute.

Further, since the liability, if any, in this case arises from the joint actions of Marasco and Beck, any liability should be determined through the arbitration process rather than through two different types of forums.

Because of the broad language of the arbitration agreement and nature of the allegations in Coggin's complaint, Coggin should be estopped from arguing that Beck cannot assert rights under the arbitration agreement.

10

_____

Katherine E. Giddings and Kristen M. Fiore, Akerman LLP, Tallahassee, and Donald E. Holmes, Russell D. Castleberry, and George A. Young, Holmes & Young, P.A., Palatka, for Appellant.

Christopher B. Lunny, M. Drew Parker, and Angela D. Miles, Radey Law Firm, Tallahassee, for Appellee Asbury Jax Ford, LLC. No appearance for Appellee Marasco.