# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

THE MacDOUGALD FAMILY LIMITED PARTNERSHIP, LLP, a Nevada limited liability partnership; STEPHEN MITCHELL WATERS 2020 MLB IRREVOCABLE TRUST AGREEMENT; STEPHEN M. WATERS; GARY MARKEL; and ROBERT KLEINERT,

Appellants,

v.

RAYS BASEBALL CLUB, LLC, a Florida limited liability company; 501SG, LLC, a Delaware limited liability company; and STUART STERNBERG, individually,

Appellees.

No. 2D23-9

_____

September 15, 2023

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Pinellas County; Amy M. Williams, Judge.

Courtney L. Fernald and Amy Dilday of Englander and Fischer LLP, St. Petersburg; and Chris W. Altenbernd of Banker Lopez Gassler P.A., Tampa, for Appellants.

Shirin M. Vesely and Adam B. Brouillet of Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., St. Petersburg; Joseph H. Varner III and Bradford D. Kimbro of Holland & Knight LLP, Tampa; and Randall A. Brater of Arentfox Schiff LLP, Washington, D.C., for Appellees.

BLACK, Judge.

The Limited Partners of Tampa Bay Rays Baseball, Ltd., appeal from the order compelling binding arbitration of the Limited Partners' claims against Rays Baseball Club, LLC; 501SG, LLC; and Stuart Sternberg.[1] We reverse.

Tampa Bay Rays Baseball, Ltd. (the Partnership), was formed in 1995. The Limited Partners are the limited partners in the Partnership; 501SG is the managing partner and sole general partner of the Partnership. Mr. Sternberg is 501SG's chief executive officer and manager. Rays Baseball Club, LLC (RBC), formed in 2019, is a wholly-owned subsidiary of the Partnership, with the Partnership as RBC's sole member. As relevant to this appeal, the Limited Partners and 501SG are the only parties to the Partnership's controlling document (the Partnership Agreement).

In June 2022, the Limited Partners filed the underlying lawsuit against RBC, 501SG, and Mr. Sternberg. The Limited Partners raised the following claims: fraudulent transfer, citing chapter 726, Florida Statutes; violation of the Florida Deceptive and Unfair Trade Practices Act; tortious interference; unjust enrichment; accounting; and injunctive relief. Of the six claims brought in the lawsuit, only one identifies 501SG as a defendant; the remaining five claims are brought against RBC and Mr. Sternberg or only against RBC. Following limited discovery and consolidation of this lawsuit with two previously filed lawsuits, RBC, 501SG, and Mr. Sternberg moved for binding arbitration pursuant to the

---

[1] For purposes of this opinion, MacDougald Family Limited Partnership, LLP; Stephen Mitchell Waters 2020 MLB Irrevocable Trust Agreement; Stephen M. Waters; Gary Markel; and Robert Kleinert—the appellants—are referred to as the Limited Partners.

2

Partnership Agreement. The arbitration provision of the Partnership Agreement provides:

> If at any time during the existence of the Partnership, any question, disagreement, difference or controversy including, without limitation, determination of whether cause exists under Section 7.4 [Resignation, Removal, Death, or Disability of Managing Partner] or Section 10.3 [Removal of a General Partner for Cause], shall arise **between any of the Partners concerning the meaning or interpretation of this Agreement**, then the Managing Partner or any General Partner may direct that such question, disagreement, difference or controversy be submitted to nonbinding mediation in St. Petersburg, Florida, in accordance with the mediation rules then obtaining of the American Mediation Association (or such other rules as to which the parties may agree), and all of the Partners agree to participate in such mediation. If such mediation does not result in a resolution of the issue, then the Managing Partner or any General Partner may direct that such question, disagreement, difference or controversy be submitted to and determined by binding arbitration in St. Petersburg, Florida, in accordance with the rules then obtaining of the American Arbitration Association.

(Emphasis added.)

The Limited Partners argued below, as they argue on appeal, that the arbitration provision plainly applies only to disagreements between the partners "concerning the meaning or interpretation of th[e] [Partnership] Agreement" and that none of the claims raised in the underlying lawsuit concern the meaning or interpretation of the Partnership Agreement. The Limited Partners pointedly argued that the arbitration provision does not provide for arbitration of "all claims or controversies between the parties," "all claims arising out of or relating to the Partnership Agreement," or similarly broad language. RBC, 501SG, and Mr. Sternberg contended that the claims at issue should be arbitrated because the claims in the previously-filed lawsuits had been

3

ordered to be arbitrated and "it's all the same subject matter. . . . [The Limited Partners] are suing on their rights under the [P]artnership [A]greement."

In its order granting the motion to compel arbitration, the court found that the allegations of the underlying lawsuit are "substantially similar" to allegations in one of the previously filed lawsuits for which arbitration had been compelled; that the Partnership Agreement is "central to the[] [underlying] claims"; that the arbitration provision is valid; that arbitrable issues exist; and that the right to arbitrate has not been waived.

"This court employs 'a de novo standard to review the circuit court's construction of the arbitration agreement and its application of the law to the facts found.' " *Spring Lake NC, LLC v. Figueroa*, 104 So. 3d 1211, 1214 (Fla. 2d DCA 2012) (quoting *New Port Richey Med. Invs., LLC v. Petscher ex rel. Stern*, 14 So. 3d 1084, 1086 (Fla. 2d DCA 2009)). "[T]he 'scope of the arbitration clause' is a pure matter of contractual interpretation." *Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC*, 249 So. 3d 765, 768 (Fla. 1st DCA 2018). And "[d]etermining whether an arbitrable issue exists requires the court to examine the plain language of the parties' arbitration agreement." *Bailey v. Women's Pelvic Health, LLC*, 309 So. 3d 698, 701 (Fla. 1st DCA 2020). "Although any doubts regarding the scope of an arbitration clause should be resolved in favor of arbitration, where the contract provision is not doubtful, arbitration should not be ordered." *Ocwen Fed. Bank FSB v. LVWD, Ltd.*, 766 So. 2d 248, 249 (Fla. 4th DCA 2000) (citation omitted).

While the arbitration provision in this case uses the generally broad in scope "concerning," *see Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 591-93 (Fla. 2013), it restricts the nature or subject matter of

4

the dispute to the "meaning or interpretation" of the Partnership Agreement.[2] The latter language is determinative here, rendering the arbitration provision narrow in scope. *See, e.g., BREA 3-2 LLC v. Hagshama Fla. 8 Sarasota, LLC*, 327 So. 3d 926, 933 (Fla. 3d DCA 2021) (applying "well-established case law" to conclude that an arbitration clause requiring "any dispute under this agreement" to be submitted to arbitration is "undoubtedly narrow"), *review denied*, No. SC21-1493, 2022 WL 71014 (Fla. Jan. 7, 2022); *Fla. Dep't of Ins. v. World Re, Inc.*, 615 So. 2d 267, 269-70 (Fla. 5th DCA 1993) (concluding that the "arbitration provision limit[ed] issues requiring arbitration to differences of opinion *arising* from the *interpretation* of the contract" and that where "[n]one of the[] issues appear to require any interpretation of the agreement in question" arbitration was not required). To conclude that the arbitration provision in this case is so broad as to encompass claims that do not involve interpretation of the Partnership Agreement would require us to ignore the words "meaning or interpretation," something we cannot do. *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999) ("[C]ourts have given different meaning to [arbitration] clauses on the basis of the actual terminology used."); *Beck Auto Sales*, 249 So. 3d at 769 ("[W]e cannot ignore the fact that the arbitration provision used the specific phrase 'derives from,' rather than a more general term, like, say 'relates to.' "); *see also World Re*, 615 So. 2d at 270 (reversing the order compelling arbitration where the arbitration provision's "language is narrowly tailored to limit the arbitration requirement to disagreements

---

[2] "Concerning," in this context, has no materially different meaning than "relating to," "about," "with reference to," and "regarding." *See Ham v. Portfolio Recovery Assocs.*, 308 So. 3d 942, 948-49 (Fla. 2020).

regarding the interpretation of the contract, something that is not necessary to resolve the issues raised in the amended complaint").

The arbitration provision at issue restricts the arbitration requirement to disagreements concerning the meaning or interpretation of the Partnership Agreement. None of the claims raised by the Limited Partners in the underlying lawsuit relate to or bear upon the interpretation of the Partnership Agreement. That they share similarities with previously raised claims that do concern the meaning of the Partnership Agreement does not change the analysis. Neither does the Limited Partners' reference to the Partnership Agreement to establish the existence of the Partnership and to provide context for their claims.

The Limited Partners' claims are not within the scope of the arbitration provision of the Partnership Agreement.[3] The trial court therefore erred in granting the motion to compel arbitration.

Reversed and remanded.

KHOUZAM and MORRIS, JJ., Concur.

––––––––––––––––––––––––––

Opinion subject to revision prior to official publication.

––––––––––––––––––

[3] Our conclusion as to the scope of the arbitration provision renders moot the Limited Partners' argument regarding RBC's and Mr. Sternberg's authority or standing to invoke arbitration as nonparties to the Partnership Agreement, as well as their argument that 501SG, Mr. Sternberg, and RBC waived any rights they may have had to compel arbitration, and nothing in this opinion should be construed as a comment on those arguments.